GABBERT, Administrator, Appellant, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

**In Banc, December 24, 1902.***

1. **Constitution:** AMENDMENT: GRAND JURY: MODIFICATION. The modification or total abolition of the grand jury system might be accomplished without impinging in the most remote manner upon the right of trial by jury in either civil or criminal cases.

2. ————: ————: ————: JURY TRIAL. The common law right of trial by jury, by which is meant a trial by twelve jurors who must render a unanimous verdict, might be so amended that nine jurors concurring could render a verdict without in any manner affecting the grand jury system of this State.

3. ————: ————: SEPARATE SUBMISSIONS. If proposed amendments to the Constitution have no inherent or natural connection with

---

*NOTE—This is a companion case of Crawford v. Chicago, Rock Island & Pacific Railway Company, found at page 68 of this volume.

Gabbert v. C., R. I. & P. Ry. Co.

each other they should be separately submitted. So that an amendment providing that a two-thirds majority of the jury in courts not of record, and three-fourths of the jury in courts of record, may render a verdict in civil cases, and another to prevent the convening of a grand jury except upon the order of a judge having power to try felonies, although each is an amendment to the same section of the Constitution, should have been separately submitted.

4. ————: TWO AMENDMENTS TO ONE SECTION. Although a section of the Constitution contains two radically different provisions, an amendment to each may be proposed at one election.

5. ————: AMENDMENT: SUBMISSION OF SECTION AS AMENDED. The Legislature has no authority to submit to the voters sections of the Constitution as amended. It has only authority to submit the amendments, and the people do not vote on "the section as amended," but only on the amendments proposed. So that if two separate amendments to the same section are submitted, and the resolutions by which they are proposed also set forth the reading of "the section as amended," and these readings are not the same, nothing that the Legislature may have said as to how the section should read after the adoption of the amendment can make the amendments mutually destructive.

6. ————: ————: JURIES: SECTION 28 AS AMENDED. The correct reading of section 28 of article 2 of the Constitution, as amended by amendments six and seven submitted to the voters at the election of 1900, is set out in the opinion in this case at page 96.

7. ————: TWO AMENDMENTS IN SAME BALLOT. There is no prohibition in the Missouri Constitution against the submission of any number of amendments in the same ballot.

8. ————: TWO AMENDMENTS JOINTLY SUBMITTED: JUDICIAL QUESTION. Whether or not the resolution proposing an amendment to the Constitution contained two separate amendments which were jointly submitted, or only one, is a judicial question, to be decided by the proper court.

9. ————: ————: AUTHORITY OF COURTS. The courts have authority to decide whether or not a proposed amendment to the Constitution has been constitutionally adopted, even though it has received the required percentage of the qualified voters and has been declared by the political department of the State to have been so adopted.

10. ————: ————: ————: AMENDMENTS: SEPARATE SUBMISSIONS. Each amendment to the Constitution must be separately submitted, so that the qualified voters can vote on each as a distinct proposition. And if two incongruous or independent amendments were jointly submitted, neither was adopted.

Gabbert v. C., R. I. & P. Ry. Co.

11. ——: ——: MORE THAN ONE CHANGE. The mere fact that a proposed amendment makes more than one change in the Constitution does not make it more than one amendment.

12. ——: ——: INTERPRETED BY OTHER PROVISIONS OF CONSTITUTION. The provision of the Constitution requiring that "no bill shall contain more than one subject, which shall be clearly expressed in its title," may well be considered in interpreting that other provision of the Constitution which requires "that each proposed amendment shall be separately submitted to the vote of the people," since the same common purpose actuated the convention in placing these two provisions in the Constitution.

13. ——: ——: JOINT SUBMISSION: JURY TRIAL: CONGRUOUS SUBJECT. The one dominant idea in the seventh amendment to section 28 of article 2 of the Constitution, submitted to the voters at the election in 1900, which provided that two-thirds of the jury concurring should be competent to determine the verdict in a civil case in courts not of record, and three-fourths in courts of record, was to abolish the rule requiring unanimity. The subordinate detail of just how many of the jury should agree was an incident. These two provisions are not such antagonistic and diverse subjects as the Constitution requires to be separately submitted. The section which these amendments proposed to change affected alike courts of record and courts not of record, and required a unanimous verdict in each, and was therefore one "symmetrical, harmonious and independent" feature of the Constitution, and after these amendments were made it retained all that harmony and symmetry, and, hence, the Constitution did not require that these changes be submitted as separate propositions.

14. Practice: AWARDING NEW TRIAL: TAKING GROUND OUT OF CASE BY AGREEMENT. If the court's record showing that the new trial was granted on the ground that "the verdict is against the evidence" remains unchanged, the appellate court will not sustain an agreement between counsel that that ground shall be withdrawn. To do so would be to convict the trial court of error, whose peculiar discretion it is to grant new trials on that ground.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

AFFIRMED.

*James W. Boyd* for appellant.

(1)   The only ground specified by the court, as re-

quired by section 801 of the statutes, not waived and withdrawn by the respondent, on which the motion for a new trial was granted, is the opinion of the court that the constitutional amendment providing that three-fourths of the jury concurring could render a verdict, is invalid. Hence, the only material question arising on this appeal is as to the validity of the said amendment. Candee v. Railroad, 130 Mo. 153; Millar v. Madison Car Co., 130 Mo. 523; Sanard Co. v. Transit Co., 122 Mo. 269; Baughman v. Fulton, 139 Mo. 559. (2) By the amendment only one section of the Constitution is amended. There is nothing contained in the subject-matter of the amendment not in that section. Section 28, article 2, Constitution. The subject-matter of the amendment is the jury. There are not only not two amendments included in one, but there is only one subject in the amendment and that is the jury. It is one amendment, so intended by the General Assembly, and absolutely so in fact. State ex rel. v. Timme, 54 Wis. 318, 11 N. W. 785; State ex rel. v. Herried, 72 N. W. 93; State ex rel. v. Mason, 9 So. 776, 43 La. Ann. 590. (3) But the "ground" specified by the circuit court is that there are two separate amendments submitted together in one ballot, not that there are two amendments included in what purported to be one amendment. There is no law against including any number of amendments in one ballot. (4) In passing on the question as to the oneness of the amendment, the oneness of an act of the Legislature under the article of the Constitution requiring that it shall contain but one subject and that shall be clearly expressed in the title, and the decisions on that subject, might well be considered. 9 So. 800. Section 28, article 4, of the Constitution provides that no bill shall contain more than one subject, which shall be clearly expressed in its title. It is held that it is complied with when all the criminal law and criminal procedure in this State, is enacted in one bill with the title "Crimes and Criminal Procedure." State v. Brasfield, 81 Mo. 162; State v. Dinisse, 109 Mo. 438; State ex rel. v. Bronson, 115 Mo. 271; Lynch v. Murphy,

159 Mo. 163; State ex rel. v. County Court, 128 Mo. 427; State ex rel. v. Miller, 100 Mo. 439. (5) Courts will not declare constitutional amendments, ratified by the voters of the State upon due publication, invalid, unless their invalidity is plain, palpable and unquestionable. Edwards v. Lesueur, 132 Mo. 434.

*Brown & Dolman* for respondent.

(1) "When the inquiry is whether the Legislature, or any other body or officer has violated the regulations of the Constitution, it is entirely plain that the decision of that subject must rest exclusively with the judicial department of the government." State v. Rogers, 56 N. J. 619; State v. Powell, 77 Miss. 571; Botts v. Secretary of State, 63 N. J. L. 289; State v. Wurtz (N. J.), 45 L. R. A. 251; Green v. Weller, 32 Miss. 650; Sproule v. Frederick, 69 Miss. 898; State v. McBride, 4 Mo. 303; Edwards v. Lesueur, 132 Mo. 410; Collier v. Fruison, 24 Ala. 100; State v. Swift, 69 Ind. 505; Koehler v. Hill, 60 Iowa 543; State v. Young, 29 Minn. 574; Secombe v. Kittelson, 29 Minn. 555; Oakland Paving Co. v. Hilton, 69 Cal. 479; Livermore v. Wait, 102 Cal. 113. (2) The resolution proposing the petit jury amendments contains two separate and distinct amendments, and the fact that they were submitted to the voters on the same ballot is a violation of the provision of section 2, article 16, of the Constitution, requiring each amendment to be submitted separately, and renders the action void. State v. Powell, 77 Miss. 543; State v. Timme, 54 Wis. 318. The General Assembly, in proposing constitutional amendments does not act in its legislative capacity, but ministerially as the special agent of the people, so that the presumptions in favor of the validity of a legislative enactment do not apply. Livermore v. Waite, 102 Cal. 118; State v. Powell, supra; In re Senate File 31, 25 Neb. 873; Hatch v. Stoneman, 66 Cal. 872; Jamison on Con. Conventions, secs. 538, 547; Edwards v. Lesueur, 132 Mo. 433. (3) The first declaration in this section is that "the right to trial by jury as heretofore en-

joyed shall remain inviolate.'' The second declaration is that a jury for the trial of criminal or civil cases in courts not of record may consist of less than twelve men, as may be prescribed by law. These two declarations of the fundamental law have no connection whatever with each other, because the constitutional right of trial by jury in courts not of record has never existed in this State. Vaughn v. Scade, 30 Mo. 604; State v. Powell, 77 Miss. 572. (4) The seventh amendment was, together with the sixth amendment, defeated. Being inconsistent they defeated each other. In re Senate File 31, 25 Neb. 804; Vaughn v. Scade, 30 Mo. 603. This court has frequently decided that the last clause, requiring the amended section to be set forth in full as amended, is the important and controlling provision of this section, and that the setting forth separately of the words to be inserted is immaterial and unnecessary. Morrison v. Railroad, 96 Mo. 602; State v. Chambers, 70 Mo. 625; State v. Thurston, 92 Mo. 327.

*Boyle, Priest & Lehmann* and *Walter H. Saunders,* amici curiae.

(1) The printing of these two sections 28, because of the conflict which made it impossible to see the effect of either, prevented either from being published in a legal manner, and it is certain that the result of both, which is claimed to make a section different from either section as amended and printed, has never been published at all. The conflict is not in the amendments themselves, as they appeared on the ballot, but in the two sections 28 as amended, which were set forth *in extenso* in the respective resolutions. An analysis of the meaning of the vote shows that neither amendment was adopted. In any event, such analysis shows that it is impossible to determine whether either amendment was adopted, and, therefore, both must fail. Should it be held that both amendments were adopted (remembering that this means that both sections 28, as amended, were adopted) then, since the amended sections are in

irreconcilable conflict, both amendments must fail. (2) The petit jury amendment, the seventh, attempted to submit two distinct propositions: *First,* the proportion of jurors requisite to return a verdict in courts not of record; *second,* in courts of record, in such a way that both propositions had to be voted on jointly. It therefore violated the constitutional mandate, article 15, section 2, which requires each proposed amendment to the Constitution to be so submitted that it may be voted on separately, and this double-barreled resolution must snap. State v. Powell, 27 So. 927, 34 Am. Law Rep. 615.

GANTT, J.—This appeal has been before us on a question of revivor, the original plaintiff, Crawford, having died after his appeal had been taken to this court. [Crawford v. Railroad, 171 Mo. 68.]

The appeal on its merits is by the administrator from an order setting aside a verdict in favor of his intestate against the defendant. The action was for damages arising from personal injuries alleged to have been suffered by Crawford, while in the employment of the defendant, by reason of the negligence of defendant's servants in backing a train which Crawford was uncoupling, without giving him any signals of their intention so to do. He recovered a verdict for $2,000 and thereupon the defendant filed its motion for a new trial in which it assigned sixteen grounds, among others, the following:

"First. That the verdict of the jury is excessive.

"Fourth. That the verdict of the jury is against the weight of the evidence.

"Tenth. That the court erred in giving to the jury the instruction numbered three asked by plaintiff, for the reason that the same is contrary to and in violation of section 28 of article 2 of the Constitution of Missouri."

The 11th, 12th, 13th, 14th, 15th and 16th grounds may be summarized: Because the court erred in holding that the amendments to section 28, article 2, of the

Constitution, had been lawfully submitted and adopted by the people of this State, whereby three-fourths of a jury in a civil action may render a verdict.

The record recites that the circuit court granted a new trial, and assigned the following reasons therefor on the record:

"First.  Because the court is of the opinion that the constitutional amendment providing that three-fourths of the jury concurring may render a verdict, is unconstitutional.

"Second.  Because the court is of the opinion that the verdict is against the weight of the evidence.

"Third.  Because the court thinks the verdict is excessive as shown by the evidence.

"Fourth.  Upon the ground that there are two separate amendments submitted together in the ballot as voted by the people."

Thereupon the parties to the suit agreed that the second and third causes shown of record for granting the motion for new trial are withdrawn, to-wit, because the verdict was against the weight of the evidence, and because the verdict was excessive.

I.  This record presents the question whether the amendments, known as the sixth and seventh constitutional amendments submitted to the qualified voters of this State by the joint and concurrent resolutions of the House of Representatives and Senate of the Fortieth General Assembly at its regular session begun and held January, 1899, were duly submitted and adopted.

The said seventh amendment so proposed was as follows:  "That section 28 of article 2 of the Constitution of the State of Missouri be amended by adding after the word 'law' in line three of said section, the following: 'and that a two-thirds majority of such number prescribed by law concurring may render a verdict in all civil cases.  And that in the trial by jury of all civil cases in courts of record, three-fourths of the members of the jury concurring may render a verdict.' "

And said proposed sixth amendment was as follows: "Amend section 28 of article 2 of the Constitution of

the State of Missouri by the addition thereto after the word 'bill' in the last line of said section the following: 'Provided, however, that no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies, but when so assembled such grand jury shall have power to investigate and return indictments for all character and grades of crime.' "

Article 15, section 1, of the Constitution of Missouri provides that "this Constitution may be amended and revised *only in pursuance of the provisions of this article.*"

By section 2 of the last mentioned article it is ordained that "the General Assembly may at any time, propose such amendments to this Constitution as a majority of the members elected to each house shall deem expedient; and the vote thereon shall be taken by yeas and nays, and entered in full on the journals." It is further provided that "the proposed amendments shall be submitted to a vote of the people, *each amendment separately.*" The third section provides for calling a convention to revise and amend the Constitution.

It is obvious, we think, that when the General Assembly came to consider the submission of the two amendments "sixth" and "seventh" above set forth, the members recognized that they were independent propositions and should be separately submitted as required by section 2 of article 15 of the Constitution. The modification or total abolition of the grand jury system might be accomplished without impinging in the most remote manner upon the right of trial by jury either in civil or criminal cases, and on the other hand, the common law right of "trial by jury," by which was meant a trial by twelve jurors who must render a unanimous verdict, might be amended as proposed so that nine jurors concurring could render a verdict and yet in no manner affect the grand jury system of the State.

The Legislature, therefore, properly submitted the two propositions separately, as they had no inherent or natural connection the one with the other.

There is nothing in the Constitution nor in reason to prevent two or more amendments to the same section, especially when a section contains, as section 28 does, two such radically different provisions in itself.   The form of the ballot used at the election at which these amendments were voted on was in evidence, and as required by our statutes, section 7122, Revised Statutes 1899, the Secretary of State had certified the form of the ballot to the various county clerks indicating "the character and nature of the proposed amendments." as follows:

"*Seventh Constitutional Amendment*:

"Providing that in courts *not of record,* two-thirds of the jury may render a verdict in civil cases; in courts of record, three-fourths of the jury."

"*Sixth Constitutional Amendment*:

"Providing that no grand jury shall be convened except upon order of judge of court having power to try and determine felonies, but when so assembled may indict for any crime."

As thus submitted on the ballots and as set out in the resolutions, these two constitutional *amendments* are perfectly consistent, and the ballots were in no  sense misleading, but it is urged with great earnestness by defendant in a brief by an *amicus curiae* that the sixth amendment defeats the seventh..   The argument is based upon the fact that the resolutions themselves, after setting out specifically the words which it is proposed to add to said section 28 of article 2, and which in fact constitute the *amendments in each case,* proceed to say, "So that said section of the Constitution when amended shall read as follows."   Thus said section 28 after the adoption of the proposed seventh amendment would read as follows:

"Section 28.   The right of trial by jury, as heretofore enjoyed, shall remain inviolate; but a jury for the trial of civil and criminal cases in courts not of record, may consist of less than twelve men as may be prescribed by law; and that a two-thirds majority of such number prescribed by law concurring may render a verdict in

all civil cases; and that in the trial by jury of all civil cases in courts of record three-fourths of the members of the jury concurring may render a verdict.    Hereafter a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or a true bill.''

And said section 28 after the adoption of the sixth amendment would read:

''Section 28.    *Trial by Jury Inviolate—Grand Jury, Twelve Men.*—The right of trial by jury, as heretofore enjoyed, shall remain inviolate; but a jury for the trial of criminal or civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law. Hereafter a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or a true bill:    Provided, however, that no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies; but when so assembled such grand jury shall have power to investigate and return indictments for all character and grades of crime.''

The contention is not that the *two amendments* are incongruous and contradictory and irreconcilable, because learned counsel in their brief say, ''The conflict is not in the amendments themselves as they appear on the ballot, but in the ''*two* sections 28 as amended which were set forth *in extenso* in the respective resolutions.''

In a word, counsel insist that by adopting the grand jury amendment, the people readopted and reaffirmed the original section 28 as to petit juries in civil cases, and thereby ordained that a jury in civil cases in courts of record should continue to consist of twelve men, whose verdict must be unanimous and when they adopted the seventh amendment which permits a verdict by nine jurors, the two became mutually destructive.

The predicate of this argument ignores the Constitution itself. It assumes that the Legislature submitted to the people the whole of section 28 in two separate amendments, when in fact it submitted two amendments only, and was not authorized by the Constitution to sub-

mit anything but "*the amendments,*" and the voters of the State were authorized only to vote on the *amendments,* and the Secretary of State was authorized to certify only the result of the vote on the amendments.

Indeed, counsel correctly concede this when they say, "The Constitution requires amendments to be voted on *separately. It does not require that the section as amended shall be set out in full. That provision is only applicable to statutes* [article 4, section 34 of the Constitution.]" There is and was no authority for the General Assembly to submit to the voters "*the section as amended*" and yet it is only by substituting "the sections as amended" for "*the amendments*" that the supposed conflict is produced. When the Legislature submitted the two amendments and the people adopted them at the polls, the section 28 was amended as proposed and nothing that the Legislature may have said about how the section should read after their adoption could contravene what the Constitution required.

After the two amendments were adopted and placed in the section at the places which they directed on their face that they should be, any person, layman as well as lawyer, could read them into the section and know that the Constitution was thus amended. The action of the Legislature in indicating how the section would read after amended was a work of supererogation and unauthorized surplusage. When the two amendments were submitted every voter who could read knew that both might be adopted or both defeated, or one adopted and the other defeated, and the recital by the Legislature of how the section would read if either was adopted, could have no other effect than to indicate what everybody knew, namely, how the section would read if no other amendment was adopted.

Every voter, moreover, knew that if he voted for both amendments he was voting to add both to the section and if adopted each would be added in its proposed place to the section and the section and its amendments would then constitute a harmonious section, which would read:

"Section 28.   The right of trial by jury, as heretofore enjoyed, shall remain inviolate; but a jury for the trial of civil or criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law; and that a two-thirds majority of such number prescribed by law concurring may render a verdict in all civil cases; and that in the trial by jury of all civil cases in courts of record, three-fourths of the members of the jury concurring may render a verdict.

"Hereafter, the grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or true bill: Provided, however, that no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies; but when so assembled such grand jury shall have power to investigate and return indictments for all character and grades of crime."

And so the said section stands to-day by the constitutional action of the General Assembly proposing it, and of the qualified voters voting it.

The people did not vote to adopt *two amended sections* of the Constitution but voted to adopt *two amendments* to one section.   These amendments were entirely consistent, each relating to a distinct subject.   This objection to the amendments is not tenable.

II.   But it is further insisted that two separate amendments were submitted together in the seventh or "petit jury amendment."   Indeed, the circuit court gave as a reason for granting the new trial, that "two separate amendments were submitted together in the ballot voted by the people."

There is no prohibition in our Constitution or laws against the submission of any number of amendments in the same ballot. On the contrary, the statute requires the Secretary of State to certify the form of the ballot and to indicate the nature of the proposed constitutional amendments, and whenever the General Assembly shall propose more than one constitutional amendment, the Secretary of State shall number them in the order in

which they are passed as "first," "second," and so on. [Sections 7121 and 7122, Revised Statutes 1899.]  The Constitution requires that "each amendment [shall be submitted] separately."   So that the question for decision is, *did* the proposed seventh constitutional amendment contain two amendments instead of one?  We repeat again, for convenience, section 28 of article 2 of the Constitution, so far as it relates to petit juries. "The right of trial by jury, as heretofore enjoyed, shall remain inviolate; but a jury for the trial of criminal or civil cases, in courts *not of record,* may consist of less than twelve men, as may be prescribed by law."   The amendment proposed was, "And that a two-thirds majority of *such number* prescribed by law concurring may render. a verdict in all civil cases, and that in a trial by a jury of all civil cases in courts of record, three-fourths of the members of the jury concurring may render a verdict."

This is the pivotal point in this case, for notwithstanding the Legislature may have submitted the seventh amendment, and notwithstanding a clear majority of the qualified voters of the State voted for it, and the Secretary of State certified on his canvass of the votes that it was adopted, if it be true that *two* amendments within the meaning of the organic law itself were jointly submitted, then neither has become a part of our fundamental law, and whether it contained only one, as insisted by plaintiff, or two, as contended by defendant, is a *judicial* question to which this court has the power to respond, and decide.

That the courts have power to decide that a proposed amendment to the Constitution has not been constitutionally adopted even though it has been so declared by the political department of the State government, we regard as now firmly settled.   It was so determined in this State as early as 1836, in State v. McBride, 4 Mo. 303, and such is the weight of judicial opinion in other States.   [State ex rel. v. Powell, 77 Miss. 543; Collier v. Frierson. 24 Ala. 100; State v. Swift, 69 Ind.

505; State ex rel. v. Timme, 54 Wisc. 318; 6 Am. and Eng. Ency. Law (2 Ed.), 908, and cases cited; Koehler v. Hill, 60 Iowa 543; Secombe v. Kittelson, 29 Minn. 555; Green v. Weller, 32 Miss. 650; Sproule v. Fredericks, 69 Miss. 898.] Sworn to support the Constitution as the supreme law, the judges are required to see that an alleged amendment thereto has become such in the only way which that instrument has provided.

The people of Missouri have established their own Constitution and have ordained that in two ways *only* it can be changed or amended, one by a constitutional convention, which can propose a new Constitution to the people for their adoption; the other permits the Legislature by joint and concurrent resolution to propose amendments to be adopted by the people, providing, however, that each amendment shall be separately submitted, so that the qualified voters can vote on each as a distinct proposition. At least twelve States of the Union have this same provision in their Constitutions, but this article has received judicial construction in a very limited number of cases. The first case on the subject originated in Wisconsin and is reported under the style of State ex rel. Hudd v. Timme, Secretary of State, 54 Wis. 318.

Section 1 of article 12 of the Constitution of Wisconsin required that ''if more than one amendment be submitted, they shall be submitted in such manner that the people may vote for or against such amendments separately.'' By act of the Legislature, which in that State performs the office of a joint resolution of the Senate and House in this State, under article 15 of our Constitution, an amendment of the Constitution providing for biennial sessions of the Legislature, and changing the time for electing members of the House and Senate, and changing the compensation of the members of the Legislature, was proposed. It was adopted, and subsequently assailed on the ground that it proposed *four* amendments, each of which could and should have been submitted separately.

The court accepted as undeniable that "no amendment can be made to the Constitution without complying with the provisions of section 1, article 12, above quoted, both in the passage of the amendment by the Legislature and in the manner of submission to the people." But said the court, "The direction in the Constitution requiring separate amendments to be submitted has no efficacy in determining what constitutes an amendment as distinguished from what constitutes two or more amendments; and as the word 'amendment' is clearly susceptible of a construction which would make it cover several propositions, all tending to effect and carry out one general object or purpose, and all connected with one subject, as well as of the construction that every proposition which effects a change in the Constitution, or adds to or takes from it, is an amendment, the construction which has been uniformly adopted by all the departments of the government for a series of years is entitled to great weight in settling by judicial decision what construction should be placed upon it." The court reached the conclusion that "in order to constitute more than one amendment, the proposition submitted must relate to *more than one subject,* and have at least two distinct and separate purposes not dependent upon or connected with each other." The court sustained the amendment, although, in its opinion, it could have been divided into different propositions and submitted separately.

The same provision exists in the Constitution of Louisiana and came before the Supreme Court in a proceeding to require the Secretary of State to publish in conformity to law the proposed amendment to charter anew the Louisiana Lottery. The case (State ex rel. v. Mason, 9 So. Rep. 776) is well worthy of perusal on account of the luminous and exhaustive discussions of the judges, each of whom expressed his views in a separate opinion. In the principal opinion by Mr. Justice WATKINS, article 256 of the Constitution of Louisiana, which is in the same words as the Wisconsin article, is quoted, and he proceeds to say:

"In determining whether the proposed amendment is amenable to the constitutional objection urged, relator's counsel makes the following admission: 'But I concede that the test to be applied to ascertain the *oneness* of the amendment is to be found in article 29 of the Constitution, which provides that every law enacted by the General Assembly shall express but one object, and that shall be expressed in its title . . . and that is the test to be applied to the oneness of an amendment.' The decisions are that when a law has but one general object, which is indicated by its title, every means or end necessary to accomplish the object is embraced in the title. [Cooley, Const. Lim., p. 172.] The generality of the title is no objection of the law, so long as it is not made to cover incongruous legislation. . . . We have been able to find and have been cited to but one case in which this question has been treated, and that is State ex rel. v. Timme, 54 Wis. 318 (11 N. W. 785), in which the court says: 'We think amendments to the Constitution, which the section above quoted requires shall be submitted separately, must be construed to mean amendments which have *different objects and purposes in view.'"*

And although the amendment proposed various objects to which the moneys which the Lottery company proposed to pay to the State should be devoted, the court ruled that in fact it contained but one, to wit, the extension of the lottery's charter for twenty-five years, and the other provisions were merely details of the one general plan.

The question arose in South Dakota on an essentially like provision in the Constitution of that State. [State ex rel. Adams v. Herried, 72 N. W. 93.] By joint resolution it was proposed to abolish a State board of trustees for certain State institutions, and to change the number and powers of the board of regents for the university and other schools. After its adoption it was attacked on the ground, among others, that *two amendments* were submitted as *one.* The court remarks that a careful examination disclosed but two decisions on

the subject, State ex rel. v. Timme, 54 Wisc. 318, 11 N. W. 785, and State ex rel. v. Mason, 9 So. Rep. 776, both of which it considered. The learned judge who prepared the opinion then proceeds to say: "Does the resolution contain more than one amendment within the meaning of the Constitution? It is contended with much apparent reason that two distinct objects were intended, namely, the abolition of the trustees and a change in the number and powers of the regents; that these objects are independent of each other; that either might have been adopted without adopting the other, and that there are numerous reasons why an elector might have desired one change, and not the other"—an argument in substance the same as that presented in this case by the able counsel for defendant, on this branch of the case. To this contention in that case the court responded: "The defect in this argument consists in substituting for the real object or purpose one of its incidents. Control of the State educational institutions is the subject to which the proposed amendment relates. Its purpose or object is to place such institutions under the control of a single board. The membership of such board, its powers, and the abolition of the local boards, are but incidental to and necessarily connected with the object intended. Hence, we conclude that only one amendment was submitted." While conceding that courts and lawyers might differ as to the result reached, the court invoked the well-recognized rule, applicable here as in cases where the constitutionality of statutes is brought into question, that the amendment should be sustained unless it plainly appears to be invalid.

One principle running through these cases and common to them all is, that the mere fact that an amendment makes more than one change in the Constitution, does not make it more than one amendment. Mr. Justice BREAUX, in his dissenting opinion in State ex rel. v. Mason, 9 So. Rep. loc. cit. 815, said: "I do not commit myself to the averment that different amendments and changes can not be made by one amendment, when they

are germane, but I do assert that the propositions [in that case] are not germane."

The remaining case cited is that of State ex rel. v. Powell, 27 So. Rep. 927, 77 Miss. 543, 48 L. R. A. 652, in which all of the foregoing cases are reviewed in a most lucid and logical opinion by WHITFIELD, C. J. The facts were these: The Constitution of Mississippi (1890) contained the following sections: Section 145 provided that the Supreme Court should consist of three judges, any two of whom should form a quorum. The Legislature was required to divide the State into three districts and the Governor by and with the consent of the Senate was required to appoint one judge for and from each district. Section 149 fixed the term of such at nine years and provided that one term should expire every three years. Section 151 provided for filling vacancies by appointment, and the length of the term of the appointee. Section 152 provided the Legislature should divide the State into convenient circuit and chancery court districts. Section 153 provided the Governor should appoint circuit judges and chancellors by and with the consent of the Senate, and they should hold their offices for four years. In January, 1898, the Legislature proposed to the people a constitutional amendment, viz., "Strike out of the Constitution sections Nos. 145-149, 151, 152 and 153 thereof, and insert in lieu thereof the following:

" 'Sec. 145. The Supreme Court shall consist of three judges, any two of whom, when convened, shall form a quorum. The Legislature shall divide the State into three supreme court districts, and into convenient circuit and chancery court districts. The terms of office of judges of circuit courts and chancellors shall be four years, and a judge of the Supreme Court eight years, and a judge shall be elected from each supreme and circuit court district and a chancellor from each chancery district, at a time to be fixed by the Legislature, and in the same manner, as far as applicable, as provided for the election of state officers. The Legislature shall enact laws providing that the present su-

preme judges shall hold for their regularly appointed terms and provide that thereafter, except in elections to fill vacancies, as near one-half as practicable, of the judges of the Supreme Court, shall be elected at each regular judicial election, the other or others holding over; and also for filling the unexpired judicial terms. The removal of a supreme court judge to the state capital during his term of office shall not render him ineligible as his own successor for the district from which he removed. All judges and chancellors shall be elected in the same manner as provided for election of Governor. All districts shall stand as now fixed till altered by law. The Legislature shall provide for party nominations of judges and chancellors by districts. Sections above named are annulled from the time at which the Legislature puts this amendment into operation as hereby provided. Circuit judges and chancellors may preside in any district as authorized or required by law.' Adopted by the Senate, January 20, 1898.''

The court after considering the cases from Wisconsin, South Dakota, and Louisiana, and approving them upon the facts stated in each, lays down the principle that ''whether amendments are one or many must be solved by their *inherent nature,* by the consideration whether they are separate and independent each of the other, leaving the constitutional scheme symmetrical, harmonious and independent on that subject,'' and not upon the mere blanketing of a name, such as ''amendments relating to the judicial department,'' etc.

The learned chief justice enforces his proposition by the following reasoning:

''It will thus be seen that the sections of the Constitution of 1890 sought to be repealed treat separately of the Supreme Court and supreme court judges, and of the judges of the circuit and chancery courts. Section 177, relating to vacancies in the office of circuit judges and chancellors, and the method of filling them where the vacancy occurs during the recess of the Senate, was wholly overlooked by the proposed amend-

ments.   It might well be that many voters might have been willing to vote for the election of circuit judges and chancellors who would be unwilling to vote for the election of supreme judges, and that many voters might have been willing to vote for the election of all judges, and yet wholly unwilling to vote for party nominations, by districts, of judges to be voted for over the whole State.   Whether an amendment is one or many clearly must depend upon the nature of the subject-matter covered by the amendment.   If the propositions are separate, one in no manner dependent upon the other, so that a voter may intelligently vote for one and against the other, one being able to stand alone, disconnected wholly from the others, then such amendments are many and not one, are severable and not a unit, are complete each in itself, and not each a part of an interdependent scheme; and such, manifestly, are the amendments in this case.   A voter might have chosen to vote for the election of circuit judges, and not for the election of chancellors; and one might have chosen to vote for the election of both circuit judges and chancellors, and yet not for the election of supreme judges; one might have been willing to vote for the election of all judges, and yet not willing to sanction, by his vote, a scheme for party nomination, by districts, for judges to be voted for by electors of the entire State, such as proposed in these amendments.   And an elector might have exercised his choice between these four amendments, voting for one or more and against one or more; and one amendment as to the election of circuit judges or chancellors or supreme judges might have been adopted and the others rejected, and our constitutional scheme remained perfectly symmetrical and harmonious.   And so the people could have adopted the amendments providing for the election of all the judges, and rejected the scheme propounded for party nominations by districts, and such action would have been perfectly intelligent; and these three amendments could have been written into the Constitution without the other, which is not essential to any one of the three amendments.''

The court concludes there were at least four amendments submitted to the people in the one proposition and for that reason the amendments were not submitted in accordance with the constitutional provision that the amendments "shall be submitted in such manner and form that the people may vote for or against each amendment separately." Const. of Miss. (1890), sec. 273.

The foregoing cases are the only ones we have been able to find and the only ones which the industry of counsel have pointed out.

They all concede that the mode established by the Constitution for its amendment must be followed; that it is a limitation upon the power of the Legislature and people alike. To change the Constitution otherwise than by following the methods which the people in adopting it have prescribed is nothing less than revolution. The requirement that amendments shall be separately submitted is mandatory. The difficulty and the only difficulty is in determining in a given case what is a single amendment. It is obvious that an amendment may be one and yet include several changes, and incidents, all germane to its one controlling purpose. The courts and learned counsel who grappled with the question in the cases noted deemed it proper to consider the kindred provision in those Constitutions which is also found in section 28, article 4, of the Constitution of Missouri, viz.: "No bill shall contain more than *one subject,* which shall be clearly expressed in its title."

This inhibition found in the same organic law, framed by the same body, may well be considered in interpreting that law.

It is a familiar canon of construction that "words and clauses in different parts of a statute must be read in a sense which harmonizes with the subject-matter and general purpose of the statute." [Sutherland on Stat. Con., sec. 241.]

The convention which required each amendment to be separately submitted also ordained that no act of the Legislature should contain more than one subject

and that subject should be clearly expressed in the title. The *same* common purpose actuated the convention in placing these two provisions in the Constitution. "It was intended to kill 'log-rolling' and prevent unscrupulous, designing men and interested parties from dexterously inserting matters in the body of a bill, of which the title gave no intimation of the true character, or of comprising *subjects diverse* and antagonistic in their nature, in order to combine in its support members who were in favor of a particular measure." [State v. Miller, 45 Mo. 498.] But the uniform ruling of this court has been that if the matters embraced in the bill were congruous and had a legitimate connection or relation to each other, the generality of the title would not make it objectionable. [State ex rel v. Bronson, 115 Mo. 271; State ex rel. v. Miller, 100 Mo. 439; Lynch v. Murphy, 119 Mo. 163.]

When we consider that when the two houses adopted the joint resolution proposing the seventh amendment to section 28 of article 2 of the Constitution of this State, every member of both houses knew that said section 28 secured to the people of this State the common-law right of trial by jury, by which was meant a trial by twelve disinterested jurors whose verdict must be unanimous, in all trials in courts of record, but that in courts not of record the jury might consist of less than twelve as might be prescribed by law, it is absolutely clear that the Legislature intended to submit to the people whether they would change the principle of common-law trials by jury to the extent that it required a unanimous verdict, and provide that a less number should decide a case.

Section 28, article 2, as it stood in the Constitution, was perfectly harmonious and congruous. Nowhere would the provision allowing less than twelve to constitute a jury in courts not of record have been so appropriate as is in the section which guarantees jury trial.

A less number than twelve was allowed in the inferior tribunals, it is true, but still it guaranteed jury

trial and an unanimous verdict even in those courts.

Many able, learned and patriotic men had come to regard the rule requiring unanimity in the verdict in civil cases as absurd and 'out of harmony with all the other principles of our government. Judge COOLEY had declared it to be "repugnant to all experience of human passions, conduct and understanding." Mr. Justice MILLER of the Supreme Court of the United States had expressed his opinion "that some number less than the whole should be authorized to render a verdict," but he also said, "I would not be willing that a bare majority should be permitted to do this. It should be something more than a majority." Whereas Judge CALDWELL, than whom few judges or publicists have more ably championed the jury as a feature of our judicial system, is emphatic in his opinion that only a majority should be required to concur.

In view of all this discussion, the Legislature determined to submit to the people the propriety of abolishing the rule of unanimity, not in courts of record only, but in courts not of record, and this is the one dominant idea in this seventh amendment; the subordinate detail of how many should agree was the incident and they submitted that three-fourths in a court of record, and two-thirds in a court not of record, should be the requisite number.

"Jury trial," the abolition of unanimity in their verdict, thus formed the one subject of this amendment. It affected alike juries in courts of record, and courts not of record. As the section stood prior to this amendment it formed one "symmetrical, harmonious and independent" feature of our Constitution, and when amended by the adoption of this seventh amendment it retained all of its harmony and symmetry, and the court and lawyer looking to the fundamental law would naturally expect to find the whole under the one comprehensive title "Trial by jury." There was no occasion for cutting the amendment in two, when, as it stood, it abolished the common-law rule of unanimity in all civil cases, whether in courts of record or courts not of rec-

ord, and then provided for the majority in each in the connection in which the Constitution had grouped them.

The observation of Judge STORY commends itself at this juncture:

"Constitutions [and we may add amendments to Constitutions] are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them with the help of common sense and can not be presumed to admit in them any recondite meaning or any extraordinary law." [1 Story, Constitution, 451; Black on Interpretation of Laws, 28.]

This amendment related to one subject, proposed the abolition of the rule of unanimity and a substitute for it in the two cases which the Constitution had already grouped into one section—juries in courts of record and courts not of record. The remainder was incidental detail.

It results that in our opinion the seventh amendment is not obnoxious to the criticism so ingeniously and ably urged against it.

III. Having disposed of the constitutional points, it is exceedingly probable that this appeal has performed its original purpose, to-wit, to have the constitutionality of the seventh amendment determined by this court.

Indeed, counsel for appellant so contends. He insists that by the stipulation of counsel all other questions are eliminated. We recur to the state of the record. Plaintiff obtained a verdict in the circuit court. Defendant filed its motion for a new trial, containing some sixteen grounds. One assailed the verdict on the ground that it was excessive, and another because against the weight of the evidence. The other grounds

presented the constitutional questions which we have discussed. The circuit court granted a new trial, and this appeal is prosecuted to reverse its action in so doing.

The court recited that it granted the motion on four grounds, two of which were, the "verdict was excessive," and was "against the evidence."

Thereupon counsel for plaintiff and defendant (so the bill of exceptions recites) "agree that the second and third causes shown of record for granting the motion for a new trial are withdrawn and waived by defendant." It will be observed the court was no party to this agreement. It had made its record setting aside the verdict and specified the grounds as the law requires. The two grounds which the parties agreed to withdraw were two which this court has always held rested in the discretion of the trial court because of its peculiar advantages. The proposition now is, with the court's record standing unmodified by it and constituting a part of the record proper, shall parties be allowed, by their *ex post facto* stipulations, to convict the court of error?

It will be observed that while the parties stipulated that the two grounds, excessive verdict and verdict against the weight of the evidence, should be withdrawn, they did not ask, neither did the court change its record and eliminate those grounds. The motion of the defendant had been acted on, the new trial awarded and now we are asked to annul this action of the court when no motion was made in that court looking to that end.

We are of opinion that we must be governed by the state of the record. Our jurisdiction is appellate, and we can not adjudge error in a matter which lies peculiarly in the discretion of the trial court.

The judgment of the circuit court awarding a new trial for the reasons that the verdict was against the evidence and was excessive must be affirmed, and disapproved as to its holding that the amendments to section 28, article 2, of the Constitution, were not constitutionally adopted. Affirmed. All concur.