McClure v. Feldmann.

SARAH McCLURE, Appellant, v. FELDMANN.

Division Two, December 13, 1904.

1. **INSTRUCTION: Repetition of Words.** It is unnecessary, in a case of negligence, charging defendant with having placed refuse matter on a public highway which frightened plaintiff's horse, to use the words "upon the highway" in every instruction, if the instructions given are sufficient to clearly inform the jury of the issues.

2. ———: **Consistency: Two Lines of Defense.** Where the defense to an action of negligence is along two lines not inconsistent with themselves, instructions which separately present each defense are not inconsistent. In this case, which charged defendant with piling straw and paper on a public highway which so frightened plaintiff's horse as to cause him to overthrow her buggy, one line of defense was that the rubbish was not of such a character as to frighten a horse of ordinary gentleness, and the other that the rubbish was not on the road but on defendant's own premises, and it is *held*, that separate instructions presenting these defenses were not inconsistent.

3. ———: **Justice Court: Complaint.** Instructions which authorize a recovery by plaintiff on a ground different from that laid in the complaint, even though the action originated in a magistrate's court, should not be given. If the complaint charges defendant with placing rubbish "upon and within the right-of-way of the public road," plaintiff can not recover if the evidence shows that defendant placed the rubbish outside the right-of-way and it was driven by the wind onto the right-of-way.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*J. E. Thompson* for appellant.

(1) Respondent's instructions 1 and 3 required the jury, before they could find for appellant, to find that the paper and straw, the refuse matter, was of a character naturally calculated to frighten horses of ordinary gentleness. This required a finding that the

refuse matter, no difference where located, must be of such a character in itself. This was not the issue. The issue was, under both the pleadings and the evidence, and under the law, "was the refuse matter, so upon the highway, an object naturally calculated to frighten horses of ordinary gentleness while being driven along the highway?" Golden v. Railroad, 84 Mo. App. 59; Railroad v. Wynant, 114 Ind. 525; Bennett v. Lovell, 12 R. I. 166; Tuner v. Buchanan, 82 Ind. 147; Foshay v. Town of Glen Haven, 25 Wis. 288; Ayer v. City of Norwich, 39 Conn. 376. These instructions, upon this issue, conflict with appellant's given instruction 1. It is reversible error to give conflicting and erroneous instructions. It can not be known which the jury followed. Frank v. Railroad, 57 Mo. App. 181; Redpath Bros. v. Lawrence, 42 Mo. App. 101; Voegeli v. Pickett, etc., Co., 49 Mo. App. 643; Hickman v. Link, 116 Mo. 123; Spillane v. Railroad, 111 Mo. 555; Baer, Seasongood & Co. v. Lisman, 85 Mo. App. 317. Instructions must be drawn in conformity to the pleadings and the evidence applicable thereto. Macke v. Davis, 61 Mo. App. 524; McDonald v. Railroad, 32 Mo. App. 70. (2) Respondent's instructions 1 and 2 are inconsistent with each other. The one would imply that if the jury found the refuse matter claimed to have been placed on the margin of the highway by the respondent was of a character calculated to frighten horses, they might find for appellant. The other that although the jury might find this to be true, yet they could not find for appellant if they found the refuse matter upon appellant's own premises. (3) If appellant did pile the refuse matter on the side of the highway (as he testified he did) and this was on open ground adjoining the highway and used by the public, and the refuse matter became scattered, either by the wind or a team driven over it, and in this way got upon the highway, this would be the reasonable and probable result of respondent's act in piling it out there, and would be respondent's piling

and dumping upon the highway. Forney v. Gilder-macher, 75 Mo. 113; Walter v. Railroad, 55 Mo. App. 410. Appellant's statement of cause of action, when it charged respondent with dumping and piling the refuse matter upon the highway, whether respondent actually carried it out and piled it on the highway, or piled it on the side and the wind blew it on the highway, or teams being driven over it scattered it onto the highway (it being on open ground and used by the public and open for the use of the public), was sufficient to justify the giving of appellant's refused instructions 4 and 5. It is a pleading in a justice court where every reasonable implication can be resorted to to determine the scope of the allegations. Van Cleave v. St. Louis, 159 Mo. 574. Appellant's oral statement to the jury was part of the pleadings. In it it was expressly charged that respondent admitted he piled it out there but claimed he piled it on the side of the highway. The wind was blowing that afternoon and this paper became scattered around over the place out there. The oral statement to the jury in justices' courts is a part, and may be a material part, of the pleadings. Coughlin v. Lyons, 24 Mo. 534; Force v. Squier, 133 Mo. 309; Bradley v. Sweiger and Haddock, 61 Mo. App. 419; Lemon v. Lloyd, 46 Mo. App. 456; Terti v. Ins. Co., 76 Mo. App. 44; Gregory v. Dunn, 38 Mo. App. 286; Barbaro v. Occidental Grove, 4 Mo. App. 429. Appellant's refused instructions 4 and 5 ought to have been given.

*Dempsey & McGinnis* and *Pearson & Pearson* for respondent.

(1) Plaintiff's first point, urging that defendant's instructions 1 and 3 are in conflict with plaintiff's instruction 1, is not well taken. Defendant's instruction 1 raises the simple question as to whether this pile of paper and straw presented an object which was of a character "calculated to frighten a horse of ordinary

gentleness;'' and defendant's third instruction presents the same question as in number 1, and the additional question as to whether or no the defendant piled this waste and refuse matter upon the right-of-way of the public road; and these two questions are also presented to the jury in instruction 1 asked by and given at the request of the plaintiff. The issues on these two questions, or points, were, by the jury, found for the defendant. And as these were purely questions of fact, this court can not and will not interfere with their finding. (2) Instructions 4 and 5, asked by plaintiff, and refused by the court, were properly refused. They injected an issue which was not raised by the pleadings, and upon which there was no evidence to base the instructions, to-wit, as to whether or no, after defendant piled this refuse matter on his own premises, within five feet of the public road, portions of it were blown or scattered along and on the public road, and the horse attached to the buggy in which plaintiff was riding became frightened at these scattered pieces, and in consequence thereof plaintiff was injured. The allegation in the petition or statement is that the horse became frightened at the pile of refuse matter; that it, the pile, presented ''an object that was calculated to and did frighten the horse,'' not that scattered portions of this pile was what the horse scared at. The plaintiff's testimony was that when the horse got opposite the store he turned his head, saw the pile of refuse matter, and scared at it. There was no allegation, and no testimony in evidence, that it was the scattered portions of the pile that frightened the horse, instead of the appearance of the pile itself, and the court was justified in refusing instructions 4 and 5 as asked by plaintiff.

FOX, J.—This is a suit begun on the first day of April, 1901, by appellant against respondent, before a justice of the peace. The cause of action, as amended and upon which the trial was had, is as follows:

"Plaintiff for cause of action says that the defendant, on the 27th day of March, 1901, wrongfully, unlawfully and without right, dumped and piled a lot of waste and refuse matter upon and within the right-of-way of the Louisiana, Bowling Green and Ashley gravel road, the same being a public road leading from said Bowling Green to Ashley in said Pike county, at or about the point on said road where the same leads through the village or town of St. Clement in said Pike county, said waste and refuse matter consisting of paper and other refuse matter (which said pile of paper and straw was an object naturally calculated to frighten horses of ordinary gentleness), and was so piled and dumped by the defendant within a few feet of the main line of travel upon said road. That the defendant permitted said pile of waste and refuse matter to so remain until the 27th day of March, 1901 (for a space of time of four hours), and that on said last-named date plaintiff was travelling upon said road—in a one-horse buggy—and that said horse became frightened at said pile or dump of waste and refuse matter, and violently swerved and lunged, threw the buggy over and violently dragged and threw the plaintiff out of said buggy. Wherefore plaintiff asks judgment for two hundred and fifty dollars and for costs."

Upon the trial the plaintiff's testimony was substantially as follows:

"I am now and was on the 27th day of March last working for my cousin, Luke Emerson, as his housekeeper. St. Clement is on the gravel road beween Bowling Green and Luke Emerson's house. On March 27th, last, I was driving with Luke Emerson on the gravel road in a one-horse top-buggy, the top being up, going home from Bowling Green, and was passing through St. Clement at good dusk; was just jogging along and when we got just opposite defendant's store, the horse suddenly stopped, turned his head towards defendant's store, then made a lunge away from the store and upset

the buggy and threw us out. I was thrown over Mr.
Emerson. My head struck the ground; I was stunned.
The next thing I knew I was sitting up. My face was
all blood and the side of my head paining me. The
horse ran on down the road. My attention was attracted
to what the horse looked at when he stopped before he
lunged. I saw white paper, light paper and straw. It
was just scattered near the roadside, the gravel. Some
of it was nearly up to the main line of travel. Besides
the paper, there was some straw or hay, something of
that kind—rubbish. It was piled four or five feet from
the edge of the gravel part. There was a slight wind;
the paper seemed to be in motion from the wind. The
horse turned the buggy over as quickly as it possibly
could be done. Mr. Emerson helped me up and across
the road into defendant's store. As we went to the
store, I saw paper and straw; went through it—passed
right by it. The defendant was in the store. I asked
defendant why he threw all that rubbish out there. I
said it was just stuff to frighten people's horses and
maybe kill somebody. He said he intended to burn it,
but there were some horses hitched out there, and he
was afraid he would scare them. The side of my head
was hurt, which I have never gotten over, and my lip
was cut; my left arm and shoulder was hurt. My
health was all right before this, but since my head has
been troubling me and it has made me nervous. The
horse we were driving was a gentle horse. I have
driven him a great deal."

The doctor who was called to see plaintiff after
the injury testified that her injuries were serious, and
he doubted if she ever fully recovered.

George Evans, witness for plaintiff, testified as fol-
lows: "Am a merchant in Bowling Green. Heard de-
fendant testify in the justice court; was on the jury.
He said the paper and straw came out of some crates
and barrels. He said he commenced piling it out next
to the gravel road about four o'clock and burned it

about seven. I am acquainted with the character of the packing about queensware. The paper isn't any account, pretty near worthless for wrapping and the straw might be used for bedding.''

Witness Jack Tumilty testified substantially as follows: ''I heard defendant testify in the justice court. As well as I remember he said he was unpacking sometime after one o'clock and burned it between seven and eight o'clock. He said he piled it out in front and about fifteen feet from the store. Defendant said he was unpacking all that afternoon. He said that as he unpacked the queensware he piled up the refuse matter, the straw and the paper. He also said he was out there keeping that stuff piled up and not letting it get scattered over the country.''

Defendant testified in his own behalf, and stated, substantially, that ''on the 27th day of March, last, I was unpacking some queensware, began about four o'clock; there was also some glassware; it was packed in paper and straw; the queensware was packed in straw; I took the refuse matter out and piled it up, within fifteen feet from the store and thirty-five feet from the center of the gravel; I piled it there and burned it up; I piled it and burned it on my own premises; after I got done unpacking it, I burned it up or had the boys burn it up. The paper and straw was piled up there in the first place, that was piled first, but then they scattered it; somebody run over it with a wagon; that is what they told me; no, I don't know, I never saw it; I raked it up in a pile together. I went out and saw it was scattered and and I went out with a rake and raked it up in a pile and as soon as I had it there I went and hunted a plank to make a shelf to put the queensware on; and when I was making the shelves, it was dark already, and Miss McClure and Luke Emerson came in and said I piled some stuff out there and scared the horses and turned the buggy over. I don't know whether it turned it over or didn't;

I expect it did, the horses got scared. It was about half past six; somewhere right there; I couldn't say for positive; just dark. The stuff was burned where it was piled; I did not repile it to burn it; I did not rake it up when it was burned; I raked it up when it was scattered."

Other witnesses were introduced by defendant, who corroborated, in the main, the testimony of the defendant, and it is unnecessary to reproduce their testimony here.

At the conclusion of the testimony, the court, at the request of the plaintiff, gave instructions numbered 1 and 3, as follows:

"1. The court instructs the jury that if they shall believe from the evidence in the cause that the defendant, on or about the 27th day of March, 1901, dumped and piled a lot of waste and refuse matter, consisting of paper and straw, upon and within the right-of-way of the Louisiana, Bowling Green and Ashley gravel road, at or about the point on said road where the same leads through the village or town of St. Clement, and that the defendant permitted said pile of waste and refuse matter to so remain piled for the space of one hour or more, and that said pile of waste and refuse matter, consisting of paper and straw, was an object naturally calculated to frighten horses of ordinary gentleness; and if the jury shall further find from the evidence that plaintiff on said date was travelling upon said road in a one-horse buggy, and that said horse became frightened at said pile of waste and refuse matter, and in such fright, swerved and lunged and turned the buggy, in which plaintiff was travelling, over during such swerving and lunging, and threw plaintiff out of it, and on to the ground, whereby plaintiff was cut, bruised or wounded, then in such case the verdict of the jury must be for the plaintiff."

"3. The court further instructs the jury that if you shall find for the plaintiff under the instructions

heretofore given, you will allow her such damages, not exceeding the sum of two hundred and fifty dollars, as seems to you right and proper under all the facts and circumstances in evidence. In estimating her damages you have a right to consider the bodily and mental pain, if any, endured by plaintiff from the injury and fright of plaintiff, if any, medical bills and bills for nursing which she has incurred or paid and the probable future injury, if any, to her health or body, whether permanent or otherwise, resulting from defendant's wrongful act, if the evidence shows the circumstances to exist."

Plaintiff requested the court to give instructions numbered 4 and 5, which were refused. They were as follows:

"4.   Although the jury may believe from the evidence in the cause that defendant piled said lot of waste and refuse matter upon the side and five feet of the Louisiana, Bowling Green and Ashley gravel road, yet if the jury shall further believe and find from the evidence in the cause, that part of said waste and refuse matter became separated and scattered from the said pile, and became and was upon the said road, and shall further believe that said part or parts of waste and refuse matter so upon said road, was an object naturally calculated to frighten horses of ordinary gentleness, and that plaintiff's horse being driven upon said road as set out in instruction numbered 1, given for plaintiff herein, became frightened at said part or parts of said waste and refuse matter, and in such fright swerved and lunged and during such swerving and lunging, turned plaintiff's buggy over and threw plaintiff out and upon the ground, thereby cutting, bruising and wounding plaintiff, then in such case the verdict of the jury must be for the plaintiff.

"5.   The court further instructs the jury that although they may believe from the evidence in the cause that the defendant dumped and piled the lot of waste and refuse matter, consisting of paper and straw, near

to and along the side of and five feet of the side of the
Louisiana, Bowling Green and Ashley gravel road, yet
this fact will not excuse the defendant if the jury shall
further find and believe from the evidence in the cause,
that defendant piled and dumped such lot of waste and
refuse matter upon open and uninclosed ground, adjoining to said road and used by the public, and permitted same to so remain piled and dumped for an unreasonable space of time, and that such pile of waste
and refuse matter was an object naturally calculated to
frighten horses of ordinary gentleness, and that the
plaintiff while driving upon said road in a one-horse
buggy, the horse hitched to the buggy became frightened at part or parts of said waste and refuse matter
scattered and separated from said pile, and in such
fright, said horse swerved and lunged and during such
swerving and lunging, turned said buggy over and
threw plaintiff to the ground and out of said buggy,
whereby plaintiff was cut, bruised and wounded, then
in such case the verdict of the jury must be for the
plaintiff.''

The following instructions were given at the request of the defendant:

''1.   The court instructs the jury that if they believe from the evidence in the cause that the paper and
straw claimed to have been placed upon the margin
of the highway by the defendant, was not of a character
calculated to frighten a horse of ordinary gentleness,
they will then find for the defendant.

''2.   The court instructs the jury that if they believe from the evidence in the cause that the pile of
paper and straw mentioned in evidence was not upon
the highway, but upon defendant's own premises, they
will then find for the defendant.

''3.   The court instructs the jury that before plaintiff can recover in this action, she must show by the
greater weight of the evidence, that the defendant on
the 27th day of March, 1901, piled a lot of waste and

refuse matter upon and within the right-of-way of the Louisiana, Bowling Green and Ashley gravel road, and that said waste and refuse matter was naturally calculated to frighten horses of ordinary gentleness, and unless plaintiff has shown both of these facts by the greater weight of evidence, then your verdict should be for the defendant.''

Upon the submission of the cause to the jury, they returned a verdict finding the issues for the defendant.

From the judgment rendered in accordance with the verdict, plaintiff prosecuted her appeal to the St. Louis Court of Appeals, and it appearing to that court that a constitutional question was involved, the cause was certified to this court, and the record is now before us for consideration.

### OPINION.

The record in this cause presents four propositions for our consideration:

First.    It is contended that instructions numbered 1 and 3, given in behalf of respondent, were erroneous for the reason that the directions of the court embraced an issue not authorized by the pleading or the evidence.

Second.    It is urged that instructions numbered 1 and 2, for respondent, are inconsistent with each other and calculated to mislead the jury.

Third.    It is insisted that the court erred in the refusal of instructions numbered 4 and 5, requested by appellant.

Fourth.    That the verdict was erroneous because returned by only nine of the members of the jury.

Upon the first proposition, it is insisted that the failure of the court to amplify, in its instructions numbered 1 and 3, the subject by stating that the "paper and straw, refuse matter," *so upon the highway was an object* naturally calculated to frighten horses of ordinary gentleness, while being driven along the high-

way, was error.  In other words, to state the proposition more clearly, it is contended that the failure of the court, in its directions to the jury, to locate the refuse matter upon the highway, as the object calculated to frighten horses, constituted error.  We can not give our assent to this contention.  The issue presented by the pleading and the case tried was as to the refuse matter placed upon the highway by defendant, and whether it was naturally calculated to frighten horses of ordinary gentleness, and it is clear, when the jury were told that the pile of refuse matter must be of that character naturally calculated to frighten horses of ordinary gentleness, that such directions had reference to refuse matter upon the highway.  That was the issue before the jury and they could not, without doing violence to their intelligence, have understood that it referred to refuse matter located anywhere else.

The jury, by instruction numbered 1, given upon the request of the plaintiff, were fully advised as to the issue upon trial; it was unnecessary in each and every instruction, in speaking of the refuse matter, to use the terms ''upon the highway,'' for it is too plain for discussion that every intelligent juror understood the court, when speaking of the refuse matter as applicable to this case, as referring to an object naturally calculated to frighten horses and to have referred to an object located upon the highway.  The instructions complained of in no way conflict with plaintiff's instruction numbered 1.

It is next insisted that instructions numbered 1 and 2, given for respondent, are inconsistent with each other.  This is a misconception of the true purpose of those instructions.

It will be noted that the defense to this action was along two lines: first, that the refuse matter alleged to have been piled up on the highway was not of a character calculated to frighten a horse of ordinary

gentleness; second, that the pile of refuse matter complained of was not upon the highway, but upon defendant's own premises. The instructions criticised simply presented both lines of defenses. While both propositions may have been embraced in one declaration, we are unable to discover wherein the error consists by stating them separately.

It is a common practice, in defenses to actions, for the court by separate instructions to require the jury to find all the essential elements necessary to fully establish the cause of action stated in the complaint.

There was no error in the action of the court in its refusal of instructions numbered 4 and 5. While we fully approve the repeated rulings of this court that technical rules applicable to pleading in courts of general jurisdiction are dispensed with in causes before justices of the peace, yet it is essential, in actions of this character, that the statement of the cause of action should be sufficiently specific to advise the opposite party of the nature of the claim made, in order that preparation may be made upon an intelligent basis to meet the demand and cause of action suggested by the complaint. We have in this case an action for damages for injuries resulting in the maintenance upon the public highway of a nuisance or, at least, of something approaching the nature of a nuisance. The cause of action as stated in the complaint specifically charges that the pile or dump of refuse matter was by the defendant placed *upon and within the right-of-way of the public road.* The instructions refused seek a recovery upon an entirely different ground, that is, on the ground of a different character of negligence.

If it was a windy day and the defendant carelessly and negligently piled or dumped straw and paper upon his own premises, upon open and uninclosed ground near the public highway, and the injury resulted from this negligence, he certainly had the right to know, from the statement of the cause of action, that he would

be required to meet this character of charge of negligence. An examination of the cases cited by learned counsel for appellant, as supporting this contention, will demonstrate that they are distinguishable from the case at bar.

There is no merit in the constitutional question presented, in respect to nine of the jurors returning the verdict. That proposition was finally settled in Gabbert v. Railroad, 171 Mo. 84, and uniformly approved by subsequent cases.

This cause was tried in the circuit court of the county in which the injuries complained of occurred. The witnesses were before the jury, and it was the province of the triers of the facts to determine the credibility of the witnesses, and the weight to be attached to their testimony. The court, by its instructions, fairly covered the issues on trial; there was a verdict for the defendant, and we are not disposed to disturb that verdict.

The judgment of the trial court should be affirmed, and it is so ordered. *Gantt, P. J.,* concurs; *Burgess, J.,* absent.