STATE *ex rel.* ADAMS, State's Atty., *et al.* v. HERRIED *et al.*

1. A proposition for an amendment to the constitution, entered in full upon the journal of the senate, and by title only upon the journal of the house is entered upon the journals of the two houses, within the meaning of Const. Art. 23, Sec. 1, providing that a "proposed amendment or amendments shall be entered on their journals."

2. A proposed constitutional amendment may become a law, though it is not printed upon each ticket upon the ballots voted in the general election.

3. A proposed constitutional amendment may become a law though the legislature made no joint resolution formally declaring that it should be submitted to the people.

4. A proposed amendment to the constitution, by one section, changed the number of regents of the state educational institutions, and by two other sections, abolished the trustees of such institutions. These sections were submitted to the people in such a way that each elector was compelled to vote for or against all the proposed changes. *Held*, that this did not violate Const. Art. 23, Sec. 1, requiring the submission of more than one amendment in such a way that they may be voted on separately as the single object of the amendment was to place said institutions under the control of a single board, and provisions incidental thereto would not constitute additional amendments.

5. The amendment of 1896 to Const. Art. 14, Secs. 3, 4, decreasing the number of a board of regents of education and increasing their powers, is authority for the creation of a new board agreeably to the constitution as amended, though the terms for which the members of the old board had been appointed had not expired.

(Opinion filed July 14, 1897.)

Original action to determine whether certain persons are regents of education. Judgment for defendants.

The facts are stated in the opinion.

*Cheever & Hall* and *C. E. DeLand*, for plaintiff.

The mere entry of the title was not a compliance with Art. 23 of the constitution; the proposed amendment should have

been entered at length in the journal. Koehler v. Hill, (Iowa) 14 N. W. 738 and 15 N. W. 609; Oakland Paving Co. v. Hilton, (Cal.) 11 Pac. 3; State v. Tufly, 12 Pac. 835. The proposed amendment was not submitted to a vote of the people, the title of the resolution not being legislation. Sutherland, Stat. Constr. § 210; 23 Am. & Eng. Encyc. of Law, 327-8; Cohen v. Barrett, 5 Cal. 195; *In re* Boston Min. Co., 51 Cal. 624; Hadden v. Barney, 5 Wall. 107; State v. Rogers, 10 Nev. 250; May v. Rice, 91 Ind. 546. The legislature cannot submit a proposed amendment to the constitution by a joint resolution. Hatch v. Stoneman, 6 Pac. 734. The proposed amendment was not printed upon each ticket upon the ballot, and hence was not properly submitted. Chap. 86, Laws of 1895.

    *Melvin Grigsby,* Attorney General, *Horner & Stewart, T. H. Null* and *George Rice,* for defendants.

    The entry by the title and number in the journal was suffi cient. *In re* Prohibitory Amendment, 24 Kans. 700; *In re* Senate File No. 31, (Neb.) 41 N. W. 981: Nesbit v. People, 19 Colo. 441. Warman v. Hafan, 21 L. R. A., 716; State *ex rel.* v. Gray, 19 L. R. A. 134; Paving Co. v. Tompkins, 72 Cal., 5. The law requiring the proposed amendment to be printed upon each ticket was superseded and repealed by the act approved March 12, 1895, (Laws 1895, Chap. 87.) The proposed amendment was properly submitted. *In re* Senate File No. 31, *supra*; Nesbit v. People, *supra*; Koehler *et al.* v. Hill, 60 Ia., 543. No matter how many seeming amendments or changes may be proposed by the legislature to a constitution, if such changes have a singularity or oneness of subject and object, they constitute in fact and in effect but one amendment or change. State v. Timme (Wis.) 11 N. W. 775; State v. Mason, (La.), 9 So., 776.

    HANEY, J. This action was commenced in this court for the purpose of determining whether certain persons, joined with the state as plaintiffs or defendants, have authority to control the educational institutions of this state. The authority of

the former is derived from appointments under Chap. 6, Laws, 1890; that of the latter from appointments under Chap. 58, Laws 1897. The action is now before the court for final determination upon the complaint, answer, and an agreed statement of facts. The right of the defendants to exercise control of the state educational institutions depends upon the effect to be given the proceedings taken by the legislature of 1895, and the people at the general election of the year 1896 to amend the state constitution. As originally adopted, that instrument contains the following provisions:

"Article XIV.   State Institutions.

"Section 1.   The charitable and penal institutions of the state of South Dakota shall consist of a penitentiary, insane hospital, a school for the deaf and dumb, a school for the blind and a reform school.

"Sec. 2.   The state institutions provided for in the preceding section shall be under the control of a state board of charities and corrections, under such rules and restrictions as the legislature shall provide; such board to consist of not to exceed five members, to be appointed by the governor and confirmed by the senate, and whose compensation shall be fixed by law.

"Sec. 3.   The state university, the agricultural college, the normal schools and all other educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of nine members, appointed by the governor and confirmed by the senate, to be designated the regents of education. They shall hold their office for six years, three retiring every second year. The regents in connection with the faculty of each institution shall fix the course of study in the same. The compensation of the regents shall be fixed by the legislature.

"Sec. 4.   The regents shall appoint a board of five members for each institution under their control, to be designated the board of trustees. They shall hold office for five years, one

member retiring annually. The trustees of each institution shall appoint the faculty of the same, and shall provide for the current management of the institution, but all appointments and removals must have the approval of the regents to be valid. The trustees of the several institutions shall receive no compensation for their services, but they shall be reimbursed for all expenses incurred in the discharge of their duties, upon presenting an itemized account of the same to the proper officer. Each board of trustees at its meeting shall decide by lot the order in which its members shall retire from office.

"Sec. 5. The legislature shall provide that the science of mining and metallurgy be taught in at least one institution of learning under the patronage of the state."

"Article XXIII. Amendments and Revisions of the Constitution.

"Section 1. Any amendment or amendments to this constitution may be proposed in either house of the legislature, and if the same shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals; with the yeas and nays taken thereon, and it shall be the duty of the legislature to submit such proposed amendment or amendments to the vote of the people at the next general election. And if the people shall approve and ratify such amendment or amendments by a majority of the electors voting thereon such amendment or amendments shall become a part of this constitution: provided, that the amendment or admendments so proposed shall be published for a period of twelve weeks previous to the date of said election in such manner as the legislature may provide; and provided, further, that if more than one amendment be submitted, they shall be submitted in such manner that the people may vote for or against such amendments separately."

The following joint resolution was proposed in one house of the legislature, agreed to by a majority of the members elected to each of the two houses, entered in full upon the journal of the senate, and entered by title only upon the jour-

nal of the house, with the yeas and nays taken thereon in each house:

"A Joint Resolution Proposing Amendments to Sections 3 and 4 of Article 14 of the Constitution, Entitled 'State Institutions," and submitting the Same to a Vote of the People.

"Be it resolved by the senate, the house of representatives concurring:

"Section 1.    Amendment. That section three (3) of article (14) of the constitution be amended so as to read as follows: 'Sec. 3.    The state university, the agricultural college, the normal schools and all other educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of five members appointed by the governor and confirmed by the senate under such rules and restrictions as the legislature shall provide.    The legislature may increase the number of members to nine.

"Sec. 2.    Amendment. That article fourteen (14) of the constitution be amended by striking out section four (4) of the same.

"Sec. 3.    Term of Office. From the time of the taking effect of this amendment the terms of office of all trustees theretofore appointed shall cease and determine."

Law 1895, Chap. 36.

All the ballots voted at the general election in 1896 contained, in a column with other proposed amendments to the constitution, the following:

Proposed Amendment to the Constitution.

§ 1. Amendment. That section three (3) of article fourteen (14) of the constitution be amended so as to read as follows:

"§ 3. The state university, the agricultural college, the normal schools and all other educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of five members appointed by the governor and confirmed by the senate under such rules and restrictions as the legislature shall provide. The legislature may increase the number of members to nine."

§ 2. Amendment. That article fourteen (14) of the constitution be amended by striking out section four (4) of the same.

§ 3. Term of Office. From the time of the taking effect of this amendment the terms of office of all the trustees theretofore appointed shall cease and determine.

| Yes | "Shall the above amendment to the constitution be approved and ratified?" |
| No | |

Electors desiring to vote "Yes" will place a cross before the word "Yes," and those desiring to vote "No" will place a cross before the word "No."

A majority of the electors voting upon the above propositions voted "Yes."

It is contended by the plaintiffs that Chapter 58, Laws 1897 under which defendants were appointed, is invalid for the following reasons: (1) The proposed amendment was not entered upon the journal of the house of representatives. (2) The proposed amendment was not printed upon each ticket upon the ballots voted at the general election of 1896. (3) The legislature did not submit the proposed amendment to a vote of the people at the next general election, or at all. (4) The title to the joint resolution (Chap. 36, Law 1895) does not truly express the subject of the act or resolution, and being broader than the act itself, is void. (5) The proposed amendment was not published as provided by the constitution and laws of this state. (6) The proposed changes in the constitution constitute more than one amendment, and the same were not submitted in such manner that the people could vote for or

against such amendments separately.    (7) Finally, it is contended that, if the proceedings taken operated to change the constitution, it was not intended to remove the persons then holding the offices of regents, and that they will continue in office until the•terms for which they were appointed shall have expired.

This court has recently had occasion to consider, with great care and the assistance of exhaustive arguments by able counsel, the principles which should control its deliberations in determining the validity of proceedings taken to amend the constitution.    Its conclusions are thus stated by the presiding judge:  "The two essential elements of an amendment to the constitution under the provisions of Sec. 1, above quoted, are (1) that a majority of the two houses shall have agreed to the proposed amendment, and (2) that the people shall have approved and ratified the same by their votes.    The other provisions prescribe the manner generally in which the essential acts shall be performed.    It is well settled that provisions of a constitution, while mandatory, are, like statutes, to receive a fair and reasonable construction with the view of ascertaining the intention of the two houses of the legislature and the people in their proceedings taken to effect an amendment; and it is the duty of courts, when that intent is ascertainable from the proceedings taken, to carry it into effect.    The action of the two houses, and the will of the people, as expressed by their vote, should not be set aside or disregarded upon purely technical grounds when no material requirement of the constitution has been omitted and where the proceedings taken clearly manifest the intention of those bodies and the people to amend the fundamental law.    It will be observed from the reading of Section 1, above quoted, that no particular form in which the two houses shall proceed in proposing, agreeing to, or submitting an amendment to the people is prescribed.    The method of proceeding is left largely to the discretion of the two houses, subject to the condition that all requirements of the constitu-

tion shall be substantially complied with.   These requirements
are:   (1) That the amendment. be proposed in one of the two
houses, but in what manner is not prescribed.   (2) It must be
agreed to by a majority of the members elected to each of the
two houses.   (3) It must be entered upon the journals of the
two houses with the yeas and nays taken thereon.   (4) It must
be submitted to a vote of the people at the next general elec-
tion.   (5) The amendment must be published substantially as
prescribed.   (6) Each amendment must be so submitted that it
can be voted upon separately."   Lovett v. Ferguson, (S. D.)
71  N.  W.  765.   Adhering to the views thus announced,
the court will now consider the objections urged to the proceed-
ings in the present case.

Regarding plaintiffs' first contention the authorities are
conflicting.   In Iowa and Nevada it is held that a simple entry
on the journal of the title or object of a proposed amendment
does not accomplish the intent of the constitution.   Kochler v.
Hill,  60  Iowa  543,  14 N. W.  738, and 15 N. W.  609; State v.
Tufly (Nev.) 12 Pac. 835.   In Kansas, Nebraska and Maryland
it is held that an entry by an identifying reference is sufficient.
Prohibitory Amendment Cases, 24 Kan. 700;  *In re* Senate File
No. 31 (Neb.) 41 N. W. 981; Worman v. Hogan (Md.) 27 Atl.
616.   In Colorado the question was before the supreme court,
but the decision really rests upon other grounds.   Indeed, that
court could not have regarded the requirement as mandatory,
and have sustained an identifying reference, because the con-
stitution of that state requires amendments to be "entered in
full."   Const. Colo. Art. 19, § 2; Nesbit v. People 19 Colo. 441,
36 Pac. 221.   The supreme court of California appear to have
held both ways, finally deciding in favor of sustaining an iden-
tifying reference.   Paving Co. v. Hilton, 69 Cal. 479, 11 Pac. 3;
Thomason v. Ruggles, 69 Cal. 465, 11 Pac. 20; Paving Co. v.
Tompkins, 72 Cal. 5, 12 Pac. 801; People v. Strother, 67 Cal.
624, 8 Pac. 383.   Except in Colorado, the language construed
in the several decisions cited is substantially the same as that

employed in the constitution of this state.    The conflict in the
adjudications results from a diversity of opinion regarding the
meaning of the phrase "enter on their journals," as used in the
several state constitutions in reference to proposed amend-
ments.    The decisions cannot be reconciled.    Perhaps it is
proper to conclude that there is a slight preponderance of au-
thority in favor of the identifying reference theory.    This con-
flict existed in 1885, when our constitution was framed.    It
should be presumed that the members of the constitutional
convention exercised the utmost care in selecting appropriate
language to express the results of their deliberations.    What
the convention intended should be the method of amending the
instrument then prepared should govern the legislature, and
control this court in determining whether any alteration there-
in has been effected.    In ascertaining what meaning the con-
vention intended should be given the phrase in question, it
would seem proper to presume that the convention was ac-
quainted with the constructions which had been placed upon
the same language, when used in the same connection, by the
courts of the other states, and to presume that, had it been in-
tended to restrict the legislature to one of these constructions,
all doubt would have been removed by employing the words
"entered at large."    Not having added the words "at large," it
is reasonable to infer that it was intended to allow the legisla-
ture the liberty of adopting either method of entry.    In any
event, language was employed which courts of the highest re-
spectability have held to warrant either an entry in full or by
an identifying reference.    Under the modern methods of con-
ducting legislative business, and preserving bills and joint res-
olutions, the action of the two houses and the contents of pro-
posed amendments can be as safely and as surely preserved by
one manner of entry as the other.    The legislature having
adopted a construction sustained by, perhaps, the greater
weight of authority—one which does not defeat any object in-
tended to be secured by the constitution—such action on its

part is entitled to consideration by this court in ascertaining what interpretation shall be given to the language under discussion. Again, assuming that each word in the constitution was inserted advisedly and after due deliberation, some force should be given the fact that in Sec. 4 of Art. 9 the legislature is required to enter executive objections "at large." If it was understood that the word "enter" itself implied to enter in full or at large, it was idle to add the words ·'at large" in the section just mentioned. In view of the authorities, the context, and for the reasons stated, we are constrained to hold that the proposed amendment was entered upon the journals of the two houses, within the meaning of the constitution.

Plaintiff's second contention is untenable. Lovett v. Ferguson, (S. D.) 71 N. W. 765.

The third objection is that the legislature did not submit the proposed amendment to a vote of the people. The constitution declares that it shall be the duty of the legislature to submit the proposed amendments to the vote of the people at the next general election. Since the state was admitted to the Union, 14 amendments have been proposed, all in the form of joint resolutions, each of which, except three, has contained an express provision submitting the same to a vote of the people. Laws 1890, Chaps. 43, 44, 45; Laws 1891, Chap. 36; Laws 1893, Chaps. 37, 38, 39; Laws 1895, Chaps. 35, 36, 37, 38; Laws 1897, Chaps. 37, 38, 39. Undoubtedly, the practice followed in nearly every instance of formally declaring by joint resolution that the proposed amendment shall be submitted is highly commendable, and strictly meets the requirement of the constitution; but as held in Lovett v. Ferguson, *supra*, the essential facts prerequisite to a change of the organic law are the agreement of the two houses of the legislature and ratification by the people. The legislature having agreed to a proposed amendment, it became its duty to sub mit the same; that is, to afford the people an opportunity, at the next general election, to vote upon the proposition. Al-

though no formal words directing a submission of this amendment are found in the joint resolution, it must be presumed that the legislature intended to do its duty, and the secretary of state and the county auditors were warranted in taking the steps provided by the statute for placing the proposition upon the official ballots.    Precisely what the constitution required to be done after an agreement of the two houses was in fact done. The people were given an opportunity to ratify or reject, in the same manner they would have been given it if the joint resolution had contained a clause expressly directing a submission of the amendment.    To hold, under these circumstances, that the action of the legislature and electors was ineffectual, would certainly be to sacrifice substance to form, and to permit an immaterial departure from technically correct methods to defeat the clearly expressed will of the legislature and the people This should not be done.    Plaintiffs' contention in this regard cannot be sustained.

The fourth and fifth objections were not seriously urged upon the argument, and do not merit further attention than the statement that neither one can be sustained, the records in the secretary of state's office showing that the amendment was published in the manner provided by the constitution and the laws of this state.

In reference to the sixth objection, it is hardly necessary to point out that the provision of the constitution requiring that amendments shall be so presented to the electors that they may vote upon each separately is one of the utmost importance, and one of substantial merit.    Since the foundation of the federal government, nothing has been more productive of evil than the practice of so combining meritorious and vicious legislation that the former could not be secured without tolerating the latter.    The reasons for preventing this pernicious practice are more forceful when considered in connection with the action of electors upon proposed constitutional amendments than when considered in connection with the action of legislators.    In the

legislature each member has an opportunity to offer amendments, and thus record his dissent to the objectionable features of any pending measure. It is not so with the elector. He must either ratify or reject the entire proposition as presented. The substantial and meritorious character of this provision of the constitution led the court, when this action was before it, upon plaintiff's application for a restraining order to suggest that it deserved the attention of counsel, as being involved by the record herein. State v. Herreid (S. D.) 71 N. W. 319. The court then properly refrained from expressing any opinion upon the question until it could have the assistance of argument by counsel. Upon the final hearing the matter was exhaustively discussed, diligent research disclosing only two adjudications in point. State v. Timme, (Wis.) 11 N. W. 785; State v. Mason, (La.) 9 South. 776. In respect to the submission of amendments separately, the constitution of Wisconsin is the same as the constitution of this state. Speaking of this provision, the supreme court of that state says: "We think amendments to the constitution which the section above quoted requires shall be submitted separately must be construed to mean amendments which have different objects and purposes in view. In order to constitute more than one amendment, the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes, not dependent upon or connected with each other. * * * We do not contend that the legislature, if it had seen fit, might not have adopted these changes as separate amendments, and have submitted them to the people as such; but we think, under the constitution, the legislature has a discretion, within the limits above suggested, of determining what shall be submitted as a single amendment, and they are not compelled to submit, as separate amendments, the separate propositions necessary to accomplish a single purpose." State v. Timme, *supra.* Applying this test, which we approve, to the case at bar, its decision is not free from doubt. A glance at the official

ballot shows that each elector was compelled to vote for or against all of the proposed changes. If any effect be given to the title of the joint resolution, it would seem to indicate that the legislature regarded it as embracing more than one amendment, and the inference arises that those who prepared the ballots failed to carry out the legislative intent. But conceding this to be so, if, as a matter of law, but one amendment is included in the resolution, the error of those who prepared the ballots should not be permitted to defeat the proposed change. Then the question is presented: Does the resolution contain more than one amendment, within the meaning of the constitution? It is contended with much apparent reason that two distinct objects were intended, namely, the abolition of the trustees, and a change in the number and powers of the regents; that these objects are independent of each other; that either might have been adopted without adopting the other; and that there are numerous reasons why an elector might have desired one change, and not the other. The defect in this argument consists in substituting for the real object or purpose one of its incidents. Control of the state educational institutions is the subject to which the proposed amendment relates. Its purpose or object is to place such institutions under the control of a single board. The membership of such board; its powers, and the abolition of the local boards, are but incidental to and necessarily connected with the object intended. Hence we conclude that only one amendment was submitted. It must be conceded that courts and lawyers may easily differ regarding the result reached herein. The question is involved in serious doubt. Such being the situation, the court invokes the well-recognized rule, applicable here, as in cases where the constitutionality of statutes is brought in question, and sustains the amendment, because it does not plainly and palpably appear to be invalid.

It is further insisted that, although the proposed amendment may have become a part of the constitution, and Chapter

58, Laws 1897, may be valid, still plaintiffs should recover, because the amendment did not operate to deprive them of office. This, we think, is not tenable.  A careful construction of the entire joint resolution leads to the conclusion that the legislature intended, if the proposed amendment were adopted, that the local boards should cease to exist when it took effect, and that the control of the educational institutions should be exercised by the board of regents until the legislature, by appropriate enactments, could create a new board, agreeably to the constitution as amended.  This appears to have been what was intended.  It is the construction placed upon the matter by the legislature, and there seems to be no satisfactory reason for adopting any other view.  It follows that Chapter 58, Laws 1897, is constitutional; that defendants are entitled to exercise control of the state educational institutions; that this action must be dismissed upon its merits, and defendants have judgment for costs.  It is so ordered.