## Curry v. Laffoon et al.

(Decided Dec. 3, 1935.)

(Dissenting Opinion Dec. 13, 1935.)

PREWITT & PREWITT for appellant.

BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Franklin circuit court sitting in equity. Suit was filed November 15, 1935 (after the general election), by appellant as a citizen, resident, and taxpayer of Mercer county, setting out the fact that the General Assembly at its 1934 session proposed to the people an amendment to the Constitution of Kentucky (Acts 1934, c. 58) repealing section 226a of the Constitution and re-enacting section 61 thereof. At the same session (Acts 1934, c. 59) the General Assembly submitted another amendment to the Constitution providing for the payment of old-age pensions. This suit is directed against the alleged validity of the first amendment submitted on the ground that its form and method of submission violate section 256 of the Constitution providing that (1) "Not more than two amendments shall be voted upon at any one time," and (2) "Said amendments shall be so submitted as to allow a separate vote on each, and no amendment shall

relate to more than one subject." Section 226a was the so-called prohibition amendment, which became a part of the Constitution in November, 1919. Section 61 of the Constitution, on the other hand, related to local option and required the General Assembly to provide a means for taking the sense of the people of particular localities "as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated." In the case of Renfro v. Hamlin, Sheriff, 256 Ky. 192, 75 S. W. (2d) 1067, it was held that section 226a was inconsistent with section 61, and therefore repealed it.

The trial court sustained a demurrer to the petition. Appellant declined to plead further, and final judgment was thereupon entered, from which this appeal is prosecuted.

It is contended by appellant that the repeal of the prohibition amendment and the re-enactment of the local option provision are two separate and distinct subjects, which should have been submitted by separate acts; that the amendment voted on is therefore invalid (1) because it relates to more than' one subject, and (2) because, together with the old-age pension amendment, it resulted in the submission of three amendments at one time. Of course, if the amendment relates to but one subject, both contentions are unsound. It is argued that a voter might favor repeal of the prohibition amendment but be opposed to local option, or might be opposed to the repeal of the prohibition amendment and in favor of adding thereto local option as to medicinal liquor. Plainly, if the question had been proposed to the voters in the manner suggested, four, and not two, options would have been opened. They might vote "yes" as to each question or "no" as to each, or they might vote "yes" on one and "no" on the other, or vice versa. Instead of submitting two distinct questions and thus permitting four possible results, the General Assembly saw fit to limit the outcome to two; namely, to preserve the prohibition amendment as a part of the Constitution, or to substitute local option therefor. The subject was the policy to be adopted in the regulation of intoxicating liquors. The fact that the question submitted was more narrow than it might have been refutes, rather than sustains, appellant's argument that the question submitted was duplicitous. No one will dispute the fact that one question might

have been submitted, wiping out of the Constitution all provisions in regard to intoxicating liquors, had the Legislature deemed such a provision wise. The greater includes the less. The fact that the Legislature saw fit to condition the repeal of section 226a upon the re-enactment of section 61 merely presented a single subject in a more narrow form.

Under section 256 of the Constitution, it is one of the functions of the General Assembly to propose amendments to that instrument. It is a matter for that body to determine how far it will go in submitting changes to the fundamental law. Here the General Assembly may have been, and doubtless was, unwilling to submit an amendment which absolutely wiped out all of the constitutional provisions on the subject of intoxicating liquors. The prohibition amendment had changed the public policy of the state in dealing with the evils incident to the liquor traffic. Lakes v. Goodloe, 195 Ky. 240, 242 S. W. 632. In the judgment of many people this changed policy was not successful and was attended with more evils than those it was designed to suppress. In submitting the amendment here attacked, the General Assembly clearly intended to take the sense of the voters on the question of continuing under the policy expressed in the prohibition amendment or of returning to the policy existing prior to its adoption. In considering an analogous question, where a single amendment submitted a provision for both initiative and referendum, under a similar constitutional provision, the Supreme Court of Montana, in the case of State v. Alderson, 49 Mont. 387, 142 P. 210, 212, Ann. Cas. 1916B, 39, said:

"The fact that an amendment can be separated into two or more propositions concerning the value of which diversity of opinion may exist is not alone decisive. If, in the light of common sense, the propositions have to do with different subjects, if they are so essentially unrelated that their association is artificial, they are not one; but if they may be logically viewed as parts or aspects of a single plan, then the constitutional requirement is met in their submission as one amendment."

We have not heretofore been called upon to pass on the exact question, but many other courts have followed the principle expressed by the Montana court. Gabbert.

v. Chicago, R. I. & P. Ry. Co., 171 Mo. 84, 70 S. W. 891; Gottstein v. Lister, 88 Wash. 462, 153 P. 595, Ann. Cas. 1917D, 1008. It is clearly right. A comprehensive collection of the cases on the subject is to be found in the opinion of the Supreme Court of North Dakota in the case of State v. Wetz, 40 N. D. 299, 168 N. W. 835, 847, 5 A. L. R. 731.

It is argued on behalf of the commonwealth that a taxpayer cannot raise the questions here presented after the general election, and that every reasonable intendment should be indulged in favor of the validity of a constitutional amendment after its ratification by the people at the polls. State v. Thompson (Fla.) 163 So. 270, 276; People v. Sours, 31 Colo. 369, 74 P. 167, 102 Am. St. Rep. 34. It is also argued that the repeal of section 226a would automatically have revived section 61 without the necessity of expressly restoring it to the Constitution, under the rule of the common law that when a repealing law is itself repealed the older law is revived. It is argued that even if section 61 should be considered as dealing with a different subject from section 226a, that so much of the amendment as related to section 61 was pure surplusage and might therefore be ignored. Since we have concluded that the amendment as proposed related to but one subject, within the meaning of section 256 of the Constitution, we do not deem it necessary to consider these other contentions.

Judgment affirmed.

Whole court sitting.

Ratliff, Justice (dissenting).

I am impelled, reluctantly because of the high esteem in which I hold the opinions of my associates, to dissent from the conclusion reached by the majority of the court. I am of the opinion that the form in which the amendment was proposed by the General Assembly and in which the question was submitted upon the ballot violates the Constitution. While the subject-matter of a constitutional amendment duly submitted and adopted presents no justiciable matter, when the form and manner of submission contravenes the instrument itself there is presented not only a question which the judiciary may consider, but one which the court's duty to keep and preserve that organic law imperiously demands that it shall pass upon and adjudge the amend-

ment invalid. McCreary, Governor, v. Spear, 156 Ky. 783, 162 S. W. 99; Cooley's Constitutional Limitations, p. 85.

The Constitution's every mandate was intended to be paramount authority to the Legislature, to the courts, and to the sovereign people themselves. Whenever the language is prohibitory, it is a positive and unequivocal negation. Whenever the language gives a direction as to the manner of exercising a power, it was intended as exclusive in character and that it should not be exercised in any other manner. A Constitution is "designed as a chart upon which every man, learned and unlearned, may be able to trace the leading principles of government." Cooley's Constitutional Limitations, p. 132. On this subject Chief Justice Marshall, in speaking of the Constitution of the United States, said in Gibbons v. Ogden, 9 Wheat. 1, 188, 6 L. Ed. 23, that the framers of the Constitution and the people who adopted it "must be understood to have employed words in their natural sense, and to have intended what they have said." Therefore, it must be very clear and certain that the people did not intend what the language they used in its natural sense and signification imports, before a court should feel itself at liberty to depart from its plain reading, or in the exercise of the power to review acts of the legislative branch of the government in respect of their constitutionality, to permit the General Assembly to do so. Neither legislatures nor courts have the right to add to or take from the simple words and meaning of a Constitution. "To preserve the instrument inviolate we must regard its words, except when expressly permissive, as mandatory, as breathing the spirit of command." Varney v. Justice, 86 Ky. 596, 6 S. W. 457, 459, 9 Ky. Law Rep. 743; McCreary v. Spear, supra.

It is a doctrine of general acceptation that if a Constitution gives direction of time or mode of proceeding for its amendment, the presumption is that the people desired that the power should be exercised at the time and in that mode only. Otherwise we would impute to the people a want of due appreciation of the purpose and proper province of such an instrument. Cooley's Constitutional Limitations, p. 159.

Our Constitution is unusually restrictive in some particulars; none more so than those relating to the

mode of revision. With this we cannot be judicially concerned except to feel that that peculiar nature of the document accentuates the uniform rule of strictness of application and more closely confines the court in its consideration of the terms controlling its amendment to the meaning ordinarily understood by the people themselves as distinguished from a legal or technical definition. As stated in Miller v. Johnson, 92 Ky. 589, 596, 18 S. W. 522, 524, 13 Ky. Law Rep. 933, 15 L. R. A. 524:

> "The instrument provides for amendment and change. * * * If it provides how it is to be done, then, unless the manner be followed, the judiciary, as the interpreter of that constitution, will declare the amendment invalid."

Under the guidance of such conception of interpretation and the purpose of the mode prescribed for revision, and with a sense of my responsibility, I examine and appraise the proposed amendment.

Section 256 of the Constitution outlines with particularity how amendments shall be proposed and adopted. Caution and limitation permeate the procedure. Clarity, certainty, and simplicity in submission are imperative. It provides:

> "Not more than two amendments shall be voted upon at any one time. Nor shall the same amendment be again submitted within five years after submission. Said amendments shall be so submitted as to allow a separate vote on each, and no amendment shall relate to more than one subject."

It seems to me that this can mean only one thing, namely, that each amendment proposed must be confined to one change or one separate and distinct subject, which must be submitted so as to allow a clear-cut yes or no vote upon its adoption or rejection without confusion or involvement. The requisite things are unity of subject and separation in presentation. These two conditions are facts which must exist in truth and reality, and not simply be declared to exist by legislative or judicial fiat whether they do exist or not. I cannot escape the conclusion that the amendment does not meet those conditions and that it is in fact composed of two separate and distinct subjects and propositions.

The people were required to vote upon both by one and the same stroke of the stencil without discrimination or choice.

The Supreme Court of Idaho wrote in reference to such provisions requiring separate submission in Mc-Bee v. Brady, Governor, 15 Idaho, 761, 100 P. 97, 101:

"This provision of the Constitution is a wise one, and is intended to prevent several inconsistent and conflicting propositions from being submitted to the voters in the same amendment, and forcing the voter to approve or reject such amendment as a whole. In other words, it prevents burdening a meritorious proposition with a vicious one, and alike prevents a vicious proposition from having the support of a meritorious one, and gives to the voter the right to have each separate proposition submitted to him in order that he may express his will for or against each separately without being compelled to accept a provision to which he is opposed in order to have adopted a provision which meets his favor. State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N. W. 785; State v. Herried, 10 S. D. 109, 72 N. W. 93; Lobaugh v. Cook, 127 Iowa, 181, 102 N. W. 1121; State v. Powell, 77 Miss. 543, 27 So. 927, 48 L. R. A. 652; Gabbert v. Ry. Co., 171 Mo. 84, 70 S. W. 891.''

Omitting title and reference to the manner of submission to the electorate, the act of the General Assembly of 1934 (chapter 58) is as follows:

"That upon the concurrence and agreement of three-fifths of all the members elected to each House the yeas and nays being taken thereon, and entered in full in their respective journals that the Constitution of the Commonwealth of Kentucky be amended by repealing and striking therefrom section 226a, which reads as follows:

" 'After June 30, 1920, the manufacture, sale or transportation of spirituous, vinous, malt or other intoxicating liquors, except for sacramental, medicinal, scientific or mechanical purposes, in the Commonwealth of Kentucky, is hereby prohibited. All sections or parts thereof of the Constitution, in so far as they may be inconsistent with this section, are hereby repealed and nullified. The General As-

sembly shall enforce this Section by appropriate legislation.'

"And by re-enacting Section 61 of the Constitution of the Commonwealth of Kentucky as adopted by the Constitutional Convention of 1890, and which reads:

" 'The general assembly shall, by general law, provide a means whereby the sense of the people of any county, city; town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of such liquors. All elections on this question may be held on a day other than the regular election days.' "

The submission on the ballot was in this form:

"Constitutional Amendment No. 1

"Constitutional Amendment to Repeal Prohibition and to provide for Local Option

"Are you in favor of repeal of the amendment to the Constitution of Kentucky which prohibits the manufacture, sale or transportation of intoxicating liquors, except for sacramental, medicinal, scientific or mechanical purposes, and the re-enactment and re-adoption of Section 61 of said Constitution, which requires the General ——Yes Assembly, by general law, to provide a means whereby the sense of the people of —— any county, city, town, district or precinct may be taken, as to whether or not spiritu- —— No ous, vinous or malt liquors shall be sold, bartered or loaned therein or the sale —— thereof regulated?"

Let us break this up for analysis. It provides:

(1) For the *repeal* of that section of the Constitution prohibiting the manufacture, sale, or transportation of intoxicating liquor, with certain exceptions;

*And*

(2) For the *adoption* of what was formerly section

61 of the original Constitution, requiring the General Assembly to provide elections for the citizens of any county, city, town, district, or precinct to express their desire as to whether intoxicating liquor "shall be sold, bartered or loaned therein or the sale thereof regulated."

In short, the two subjects are: (1) *Repeal of prohibition* of the *manufacture, sale and transportation,* and (2) *empowering the Legislature to authorize local elections* concerning the regulation or prohibition of only the *sale,* trade, or loan of intoxicating liquor.

State Constitutions do not delegate, but limit, power. The prohibition section is a self-executing prohibitory provision. The local option section only makes an exception to other inhibitory provisions and permits the Legislature to authorize a limited referendum. The only thing in common is that they both treat the sale of intoxicating liquor, but in widely different ways.

I cannot agree with the majority that "the subject was the policy to be adopted in the regulation of intoxicating liquor." The two distinct propositions cannot be thus welded into one. The first *abolishes* absolute prohibition of three things; the second *grants power* to the Legislature to pass referendum laws pertaining to only one of those things. Would the "man in the street"—the average citizen—who accepts the plain, simple language of the Constitution, say there was only one subject and one proposition? Nor can I agree that narrowing the question into a matter of policy to be adopted militates against the argument of duality. I do not think that the condition of repeal of section 226a upon the enactment of section 61 converts the two acts into a "single subject in a more narrow form."

The manner was a radical departure from the customary presentation of amendments. There should have been separate submissions or a single amendment, without duplicity and confusion, having the same result. Perhaps a form something like this would have attained that end:

> "The manufacture, sale or transportation of intoxicating liquor in this state shall not be prohibited except in counties, cities, towns, districts or precincts where a majority of the electors may not favor the sale thereof as expressed in an election

held for the purpose of taking the sense of the citizens thereon. The legislature shall provide for the holding of such local option elections upon a day other than the regular election day. All inconsistent provisions are repealed.''

It is important to note that under section 61 the General Assembly is not required to do more than authorize these special plebiscites, thereby creating an exception to other constitutional provisions. It does not make it mandatory upon the Legislature in any degree or in any particular to enact laws regulating or prohibiting the sale, trade, or lending of intoxicating liquor, even if a favorable vote shall be cast in any of the respective subdivisions of the state. In no event can there be an election or regulation or prohibition of the manufacture or transportation of intoxicating liquor anywhere in the state, except perhaps regulation under the taxing power or the law of nuisances.

Even if the amendment be regarded as embracing one subject only, we must not lose sight of the mandatory requirement that ''each amendment shall be so submitted as to allow a separate vote on each.'' Where a compound question is put and it is not possible for the voter to discriminate between the two propositions under the form of submission, but he is obliged to vote for or against both without expressing his will on them separately, they are assuredly two propositions and amendments even though they may relate to one subject. In State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N. W. 785, holding that an amendment which changed legislative sessions and adjusted legislative terms and salaries was not plural under a constitutional requirement that if more than one amendment should be submitted it must be separately done, the court laid down a rule which has been generally regarded as sound, that if the proposal have different objects and purposes in view, not dependent upon or connected with each other, it cannot be regarded as one amendment. Another test often applied is the inquiry as to whether one of them could be adopted without the other or whether one of them could be adopted without being controlled, modified, or qualified by the other. The present proposition cannot stand either test. Two objects are manifest. Their diversity and separability are established by the fact that in identical language the so-called local op-

tion section was adopted as a part of the original Constitution, and in identical language the repealed section was adopted in 1919 by an overwhelming majority. Now they are combined in one amendment; "united they stand; united they fall."

These two changes in the organic law were *conjunctively* presented. The people were not given an opportunity to vote separately upon each of them. They are assumptive as well. They assumed that all persons favoring repeal of prohibition favored vesting authority in the Legislature to provide for local option elections; and the converse, that all persons favoring retention of prohibition were opposed to local option elections. There are many who believe in the wisdom of both methods of handling these commodities, yet in voting "No" on the compound question they were, perforce, voting *against* local option—something they favored. Likewise, there are many who believe in absolute freedom of action in this matter, who believe it were better to go back to the days of some seventy-five or a hundred years ago when there was no sort of legal restraint upon the manufacture or sale of intoxicating liquor. But they were required to vote *for* local option —something they did not want. The history of Kentucky of some thirty or thirty-five years ago reflects this attitude. It will be remembered that the paramount and heated political issue of that time was whether or not the Legislature should obey this section 61 of the Constitution and enact a county unit local option law.

Let us turn to the authorities. But in doing so it may be well said that none can have the full force of legal precedent, for the Constitutions involved in each case contained only the condition that if more than one amendment should be submitted it should be done separately so as to permit a separate vote on each. (It is said there are twenty-nine such Constitutions.) None of them contained the express additional requirement of the Kentucky Constitution, sec. 256, that "no amendment shall relate to more than one subject." The Supreme Court of Colorado, in applying the more common form, construed it as not requiring the submission of separate subjects but only that each amendment must be separately submitted. People v. Sours, 31 Colo. 369, 74 P. 167, 102 Am. St. Rep. 34; People v. Prevost, 55 Colo. 199, 134 P. 129.

I note first the cases cited in the majority opinion.

In State ex rel. Hay v. Alderson, 49 Mont. 387, 142 P. 210, Ann. Cas. 1916B, 39, the Constitution (art. 19, sec. 9) provided:

"Should more amendments than one be submitted at the same election, they shall be so prepared and distinguished by numbers or otherwise that each can be voted upon separately."

When adopted a section read:

"The legislative power shall be vested in a Senate and House of Representatives, which shall be designated 'The Legislative Assembly of the State of Montana.' "

The amendment, attacked upon the ground that it did not conform to the provisions of the Constitution, repeated this section and added:

"But the people reserve to themselves power to propose laws, and to enact or reject the same at the polls except [certain classes of legislation]; and also reserve power at their own option to approve or reject at the polls, any act of the legislative assembly, except [certain classes of law]."

Then followed specific detailed provisions for exercising the right of initiative and referendum thus established. The court held that the amendment changed only one provision in the Constitution, viz., that by which the entire legislative authority of the state had been lodged in the legislative assembly by expressing a reservation of legislative authority in the people to be used in the two ways designated—the power to propose and enact laws, and the power to approve or reject laws enacted by the Assembly. I quite agree that this "does not suggest disconnection but enumeration of parts of a whole." The one subject was the manner of legislation. Gottstein v. Lister, 88 Wash. 462, 153 P. 595, Ann. Cas. 1917D, 1008, is exactly like the Montana case, in that there was involved an amendment introducing the initiative and referendum method of legislation and it was held to present only the one subject of participation of the people in legislation by direct vote.

In Gabbert v. C., R. I. & P. Ry. Co., 171 Mo. 84, 70 S. W. 891, an amendment changed an original section of the Constitution by adding:

"Providing that, in courts not of record, two-thirds of the jury may render a verdict in civil cases; in courts of record, three-fourths of the jury."

It was held that the amendment related to one subject as it proposed the abolition of the rule of unanimity and a substitute for it the two exceptions in courts of record and courts not of record.

There can be no quarrel with these decisions. It is with their application to the present facts. As stated in the majority opinion, State ex rel. City of Fargo v. Wetz, 40 N. D. 299, 168 N. W. 835, 847, 5 A. L. R. 731, gives a collection of the cases. It is pointed out that the cases are not harmonious, the conflict mainly turning upon the application of what is therein stated to be the principle which finds practically unanimous support; viz., that the constitutional provision (as to the separation of questions) was designed to prevent the submission as one amendment of distinct propositions that are so far disconnected and independent of each other as to have no direct relation to a general subject. As therein stated:

"The vice it is designed to prevent is analogous to the log-rolling and joker practices which are so familiar to students of legislation, and which are generally sought to be prevented by constitutional provisions requiring an expression of the subject of legislation in the title of the bill, and that the legislation shall concern but a single subject. It prevents the linking into one proposition of distinct amendments where there might be an attempt to join them together for the purpose of giving unmerited support to an amendment which might be thought to be unpopular, or for the purpose of defeating a popular measure by burdening it with an unpopular one. It compels each distinct amendment to stand upon its own merits, and relieves the voter of the embarassment that would be occasioned by his being compelled to vote against a measure he deems desirable in order to defeat one that he does not favor; or, if he should deem it the lesser evil, to vote for the proposition he favors and at the same time cast his vote in favor of an amendment that is distasteful to him."

Let us turn to some of the cases holding amendments which had been adopted invalid because not con-

forming with constitutional requirements as to presentation, and which seem to me to be more appropriate to the facts in hand.

In State ex rel. Howie v. Brantley, 113 Miss. 786, 74 So. 662, Ann. Cas. 1917E, 723, it was held that an amendment providing for the initiative and referendum (more detailed than those involved in the above cases) did not offend the constitutional prohibition of duplicitous submission. But nearly six years later, in Power v. Robertson, 130 Miss. 188, 93 So. 769, that case was expressly overruled and the court voided the amendment on the ground that it dealt with separate subjects and changed three or more sections of the original Constitution and was not therefore properly submitted.

The Mississippi electorate voted upon an amendment repealing several sections of the Constitution which treated separately of the Supreme Court and Supreme Court Judges and of judges of circuit and chancery courts. It was pointed out in Stage ex rel. McClurg v. Powell, 77 Miss. 543, 27 So. 927, 930, 48 L. R. A. 652, that many voters might have been willing to vote for an election of circuit judges who would have been unwilling to vote for the election of Supreme Judges and many voters might have been willing to vote for the election of all judges and yet unwilling to vote for party nominations by districts, the court saying:

"If the propositions are separate, one in no manner dependent upon the other, so that a voter may intelligently vote for one and against the other,— one being able to stand alone, disconnected wholly from the others,—then such amendments are many and not one, are severable and not a unit, are complete each in itself and not each a part of an interdependent scheme; and such, manifestly, are the amendments in this case. * * * The argument is wholly fallacious which seeks to save this method of submission by saying that all of the amendments relate to the judicial department of the government. If that argument were correct, then the mere fact that amendments, no matter how many, and no matter how absolutely independent each of the other, relating to the legislative department, could all be submitted as one, and so as to the judicial department and so as to the executive department. Whether amendments are one or many must be

solved by their inherent nature,—by the consideration whether they are separate and independent each of the other, so as that each can stand alone without the other, leaving the constitutional scheme symmetrical, harmonious, and independent on that subject, and not upon the mere blanketing of a name, such as 'amendments relating to the judicial department,' or 'amendments relating to the executive department' or to 'the legislative department.' Nothing could save these amendments, unless it be the fact that they relate to the same general broad subject of the judicial department, and this is utterly in the face of reason and principle.''

The court concluded there were at least four amendments submitted in the one proposition which violated the constitution providing that amendments ''shall be submitted in such manner and form, that the people may vote for or against each amendment, separately.''

In Lozier v. Alexander Drug Co., 23 Okl. 1, 99 P. 808, 809, and in Armstrong v. Berkey, 23 Okl. 176, 99 P. 921, it was held that a *proposition to amend the prohibition article* of the Constitution relating to the state agency for handling intoxicating liquor for lawful purposes so as to extend it to certain class towns and places *and a proposition for repeal* of another part of the enforcing provision was in effect the submission of two amendments and therefore invalid under the constitutional requirement of separation. The reasoning is so cogent I cannot refrain from extended quotation. Said the court in the first-cited case:

''No opportunity was given the elector separately to express his will by his vote upon the question of the adoption or rejection of said provision as proposed to become a part of the Constitution, nor to express such will as to whether or not said article 1 should be repealed. He might have been opposed to incorporating such amendment in the Constitution authorizing the establishment of an agency in towns of 1,000 population, or of less population, where it was determined that a public necessity existed therefor, and still have been in favor of the dispensary system, as provided for by the prohibition article of the Constitution [Bunn's

Ed. sec. 499; Snyder's Ed. pp. 394, 395; Gen. St. Okl. 1908, Ann., p. 162]. In such event he had no opportunity to express his will, and courts cannot presume from information aliunde than that furnished by the ballot title, supplied to the voter, that he understood that a vote against the proposed amendment to the Constitution should operate as a vote in favor of the repeal of article 1, or that persons being in favor of the proposed amendment to the Constitution would also favor the retention of article 1, and vice versa. The elector may have desired that the law should remain in force when limited, as provided in the prohibition article of the Constitution, but may have been unwilling to extend its provisions to towns of 1,000 population, or wherever the superintendent, with the approval of the Governor, should determine that a public necessity exists therefor.

"It appears that under the ballot title, as it was attempted to refer the matter to the people, two distinct and antagonistic questions were submitted on one ballot, which permitted only one vote, which was to be either in favor of or against both questions, and whatever the desire or will of the voter might have been, he could vote only the one way on both propositions."

In McBee v. Brady, Governor, supra, applying the general rule of interpretation to which I have referred, the court held void a proposed amendment which repealed certain sections of the Constitution and amended others providing for the abolition of probate courts and extending jurisdiction of district courts; for the election and appointment of judges; changing salaries of judges; establishing terms of the courts; and creating a system of districts. It would seem under the construction given our constitutional mandate by the majority opinion in this case that it could well have been sustained as relating to the one subject of the policy to be adopted in reference to the courts. But the Idaho court rejected that conception.

In conclusion I would add the observation that as an amendment to the organic law derives all its vitality from the free action of the people, it must be taken with a clear understanding and full appreciation of what is being done. Departure from the plain mandate of the

Constitution in submitting a proposition of change which is duplicitous, which obstructs entire freedom of expression and creates confusion, is dangerous to the stability of government. The election at which the amendments were voted upon is too recent to forget the widespread fact of confusion. Because of it, the conception that only extreme and imperative reasons can sustain the setting aside of constitutional amendments after approval loses its force.

Upon both reason and authority I am of the opinion the amendment should be held noneffective.