THE CITY OF CORAL GABLES, a municipal corporation of Florida, v. R. A. GRAY, as Secretary of State of the State of Florida.

19 So. (2nd) 318                                      June Term, 1944
October 5, 1944                                          En Banc
Petition for Rehearing denied October 10, 1944

882

882

*Edward L. Semple,* for appellant.

*J. Tom Watson,* Attorney General, and *Howard S. Bailey,* Assistant Attorney General, for appellee.

*R. B. Gautier, Jr.,* as amicus curiae.

SEBRING, J.:

Under existing law the Secretary of State of the State of Florida is charged with the duty of publishing throughout the State, and certifying to the various Boards of County Commissioners of the State for printing on the general election ballots for use in the general election, all proposed

amendments which have been agreed to by three-fifths of the members elected to each House of the Legislature.

The purpose of this suit is to enjoin the Secretary of State from performing this duty devolving upon him by law, so far as concerns House Joint Resolution No. 786, which was submitted at the 1943 general session of the Legislature and which proposed an amendment to the Constitution of Florida to be known as Article XX thereof. See House Joint Resolution No. 786, pp. 1138-1142, Laws of Florida, 1943. Motion to dismiss the bill of complaint was granted. This appeal is from the order of dismissal.

The only real question on the appeal is whether House Joint Resolution No. 786, which purports to relate to the consolidation of certain public offices in the counties of Orange and Dade, constitutes more than one amendment to the Florida Constitution, within the meaning of Article XVII, Section 1 thereof.

This is a question of first impression in this jurisdiction. But elsewhere, in states where identical or similar constitutional provisions are in force, much has been said on the subject. Succinctly stated, the rule announced in such states is to the effect that if a proposed amendment has but one main purpose and object in view and all else included therein is incidental thereto, and reasonably necessary to effectuate the main object and purpose contemplated, it is not susceptible to the charge that it contains more than one amendment. In order to constitute more than one amendment the propositions submitted must not only relate to more than one subject but must also have at least two separate and distinct purposes not dependent upon or connected with each other. And even though an amendment embrace more than one subject, said subjects need not be separately submitted to the electors, if they are so connected with or dependent upon the general subject that it might be undesirable that one be adopted and not the other. Moreover, the fact that an amendment may be capable of separation into two or more propositions concerning the value of which diversity of opinion might arise is not alone sufficient to condemn the proposed amendment; provided the propositions submitted may be logically viewed as

having a natural relation and connection as competent parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test, and it is to be looked for in the ultimate and sought, not in the details or steps leading to the end. It is only when, in the light of common sense, several propositions are submitted as one and have to do with different subjects which are so essentially unrelated that their association is purely artificial, that they are not one within the constitutional mandate, for then the unity of object and purpose is not there, no matter in what form the proposal may be framed. See State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N. W. 785; Jones v. McClaughry, 169 Ia. 281, 151 N.W. 210; State v. Herried, 10 S.D. 109, 72 N.W. 93; State v. Silver Bow County, 34 Mont. 426, 87 P. 450; People ex rel. Elder v. Sours, 31 Colo. 369, 74 P. 167, 102 Am. St. Rep. 34; State ex rel Hay v. Alderson, 49 Mont. 387, 142 P. 210; People v. Prevost, 55 Colo. 199, 134 P. 129; Hammond v. Clark, 136 Ga. 313, 71 S.E. 479, 38 L.R.A. (N.S.) 77 Labaugh v. Cook, 127 Ia. 181, 102 N.W. 1121; State v. Mason, 43 La. Ann. 590, 9 So. 776; Gabbert v. Chicago R. I. & P. Ry. Co., 171 Mo. 84, 70 S.W. 891; Gottstein v. Lister, 88 Wash. 462, 153 P. 595; Curry v. Laffoon, 261 Ky. 575, 88 S.W. (2nd) 307.

In view of the rule enunciated, we are asked to determine whether the proposed amendment squares with Section 1 of Article XVII, Constitution of Florida, which requires that "The proposed amendments shall be so submitted as to enable the electors to vote on each amendment separately."

Section 1 of the resolution proposes that on and after midnight of December 31, 1944, the county tax assessors of the counties of Dade and Orange shall each become and be the assessors of all property in their respective counties with power to make all assessments of ad valorem, acreage, and other taxes that may be imposed upon real or personal property or their use, including by way of a single valuation all assessments upon property for each municipality, town, district, or special taxing district in each of their respective counties. The resolution proposes a County Board of Equalization in each of the counties whose membership is to consist

of the several county commissioners, and of additional members appointed from and by each municipality or town in. each county, having a population of more than 3000 at the last census. Such Board of Equalization is to be established for the purpose of equalizing all taxes on *all* property within the respective counties. As respects municipalities or towns in the counties, having a population of 3000 or less, provision is made for each of them to likewise appoint additional members to the Board for the purpose of equalization of taxes as respects any property within each such municipality or town, and not otherwise.

By Section 2 of the resolution it is proposed that on and after midnight, December 31, 1944, the county tax collectors of the counties of Orange and Dade shall each become the tax collectors for all ad valorem and acreage taxes levied and imposed for the calendar year 1945 and subsequent years (except taxes now required to be collected by the clerk of the circuit court), within each of said counties, including all county taxes and all ad valorem and acreage taxes imposed by any municipality, town, district or other taxing district within each of said counties.

It likewise empowers each of said collectors, should the Legislature by statute so provide, to collect any and all other taxes, licenses or excises within said counties wherever and by whom lawfully imposed.

Section 3 of the proposed amendment gives to each of the municipalities in each of said counties the right to retain the power to assess and collect taxes, the amendment notwithstanding, only in the event that upon adoption of the constitutional amendment by the electors of the State each such municipality shall cause a special election to be held after the date of the adoption of the amendment at general election (November 7, 1944) and prior to December 31, 1944. At such special election only qualified freeholders of such municipality are to be eligible to participate and vote upon the question whether sections 1 and 2 of the resolution are or are not to be effective within such municipality. If by such vote the majority of such qualified freeholders elect to come under the provisions of sections 1 and 2, or if any munici-

pality fails to hold a special election on the question within the time provided by the amendment, then, in either such event, sections 1 and 2 are to become binding and effective upon each such municipality. It is only in case the election is called and held by a municipality pursuant to the resolution and the majority of qualified freeholders vote *not* to come under sections 1 and 2, that such muicipality may escape the effect of such provisions.

Section 4 is not material here.

Section 5 of the proposed joint resolution abolishes the offices of county tax collector of the counties of Dade and Orange after the expiration of their terms and transfers the duties of such respective offices to the clerks of circuit court of said counties.

Section 6 abolishes the offices of county solicitor and prosecuting attorney in each of said counties and places all of the duties of such respective offices in the offices of the State attorneys of each of said counties.

Section 7 abolishes the office of the Clerk of the Criminal Court of Record of Orange County, and the offices of the Clerks of the Criminal Court of Record and the Court of Crimes of Dade County, and transfers the duties of each to the Clerks of the Circuit Court of each of such counties.

Section 8 of the resolution gives to the Legislature the authority to control the compensation of each officer and the expense and conduct of each office affected by the amendment; authority to abolish all fee systems wherever they exist in the counties to be affected; and authority to control all fees and charges of all offices or officials within each of said counties.

In summary, the proposed amendment takes from the municipalities, towns, districts and special taxing districts in the territory involved, such authority as may now exist to assess property and collect ad valorem, acreage, and other taxes by each such political subdivision, and places such authority in the county tax assessor. It establishes a county board of equalization different in kind and number from that provided by law for other counties, in that the membership of such board is to be composed not only of county commissioners but also of members from each of the municipalities

and towns. It abolishes. the offices: of tax ,assessor and tax collector in the several municipalities and towns, and the constitutional office of tax collector, in the counties affected. It enlarges the powers, duties, and functions of the State Attorney, a constitutional State officer elected by the electors of the circuit in which he serves, by abolishing the offices of county solicitor and county prosecuting attorney, and transferring their powers, duties, and functions to his office. It puts an end to the offices of clerks of the several inferior criminal courts of the counties affected and transfers their duties, as well as the duties now devolving upon the county tax collector, to the clerks of the circuit court. It gives to the Legislature the authority to control the compensation of each officer and the expense and conduct of each office affected by the resolution; and to abolish all fee systems and to control all fees and charges of all offices and officials within the counties affected, whether named in the resolution or otherwise. It seeks to do this, not in regard to a single county (which,. perhaps it might do, although we express no opinion on the point as that question is not now before us for decision) but in regard to two counties not contiguous or adjacent geographically, but widely separated, and with, no doubt, local economic, social, fiscal and political condi-. tions, interests, and problems different and diverse and not at all shared in common. ·

Surely, it may not be said that the proposed amendment comprehends but one plan or scheme having but one main object and purpose, all else included therein being incidental thereto and reasonably necessary to effectuate the main object and purpose contemplated. The fact that the subject matter applies to more than one county, and not to one alone, would seem to belie that assertion. We think it clear that there are at least two distinct plans or schemes involved in the subject matter of the joint resolution; one, a plan for Dade County, the other, a plan for Orange.

How may the electors of the State at large vote upon the proposed amendment in such a manner as to express their views intelligently? It may be that the voters may well think that consolidation is good for Dade County and not for

Orange; or vice versa. The electors may be in favor of consolidation of tax assessment and tax collection functions in the counties; but not the elimination of prosecuting officers in the inferior criminal courts and the transfer of their functions to the State Attorney, who has more than one county in which to prosecute his duties. They may be in favor of entire consolidation but opposed to giving the Legislature the right by special or local legislation to abolish fee systems within the counties. A variety of other views in opposition to each other may be imagined. Yet, if required to vote upon the proposed amendment as presently framed the electors will be put to it to accept, or reject, all subject matters contained therein, in toto, without the opportunity for discrimination. This is contrary to the manifest purpose of Section 1 of Article XVII of the Florida Constitution, which is designed to require the submission of each amendment upon its merits alone and thereby secure by means of the ballot the free and independent expression of the will of the people thereon. By this constitutional requirement matters not in common, or those having no reasonable connection with each other, may not be consolidated. If it were otherwise, the elector would be put in the position where, in order to aid in carrying a proposition which he considered good or wise, he would be obliged to vote for another which he would otherwise reject as bad or foolish. It would sanction the practice of combining meritorious and vicious legislation in one proposal, so that the former could not be secured without submitting to the latter.

If such course could be pursued constitutionally there would seem to be no limitation, but conscience, on the extent to which a three-fifths majority of a Legislature might go in sending to the people proposed constitutional amendments the effect of which might well amount to the writing of a constitution binding upon one section of the State but not binding upon another, by the skillful wording of one single joint resolution. If two counties may, by inclusion in one amendment, effect a consolidation of all local governmental functions within each of said counties, then there could be no valid reason why any number of counties less than the

whole of the sixty-seven comprising the State of Florida, might not follow the same course and do likewise. If such procedure were sanctioned it is conceivable that groups of counties with common interests and common aims might easily become not unlike separate political entities within the State yet virtually sufficient unto themselves, maintaining their own peculiar systems of government, morals, and law entirely fitted to the temperament of their peoples, no doubt, but certainly not in harmony with those binding upon the people of the State elsewhere. In such event, the concept of a uniform system of government within the State would be but mythical, and the fabric of our general constitutional scheme would amount to little or nothing, or vanish entirely.

The decree appealed from should be reversed with directions that final decree be entered permanently restraining the Appellee, Honorable R. A. Gray, as Secretary of State of the State of Florida from expending any public funds upon the preparation, mailing or certifying of the proposed Joint Resolution No. 786 to the Boards of County Commissioners of the various counties of the State of Florida for printing upon the official ballots to be used at the general election in November 1944, and from continuing to advertise said resolution in the newspapers in the various counties of the State of Florida; all in conformance with the prayer of the bill of complaint herein.

It is so ordered.

BUFORD, C. J., BROWN, CHAPMAN, THOMAS and ADAMS, JJ., concur.

TERRELL, J., dissents.